MONTGOMERY TRACTION CO. v. MONTGOMERY LIGHT & WATER POWER CO. *

(Circuit Court of Appeals, Fifth Circuit. February 7, 1916.)

No. 2797.

1. CORPORATIONS ☞657—FOREIGN CORPORATIONS—CONTRACTS—RATIFICATION.

On January 30, 1909, at the time of the execution of an instrument evidencing in part a contract by a New Jersey corporation to furnish electrical current to a corporation doing business in Alabama, the New Jersey

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ᵇRehearing denied April 20, 1916.

corporation had not complied with the Alabama constitutional and statutory requirements (Const. 1901, § 232; Code 1907, § 3642), made prerequisites to the existence of any power in it to transact business in Alabama. On June 11, 1909, it complied with such requirements. Both parties recognized the existence of the contract, evidenced in part by such instrument, and evinced a mutual understanding or agreement to conform their dealings to the terms of the contract expressed in such instrument. *Held*, that they thereby adopted the contract expressed in such instrument, since, while parties cannot by ratification validate a void contract from the time it was undertaken to be made, they can, when duly qualified to contract, elect to adopt as the whole, or a part of the contract by which their dealings are to be governed what is expressed in an instrument which was ineffectual at the time it was signed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2536–2541, 2550, 2552–2554; Dec. Dig. ☞657.]

2. Specific Performance ☞6—Contracts Enforceable—Mutuality of Obligation.

A power company contracted to furnish a traction company electrical current for the operation of its railway for 15 years. It had complied with its obligations thereunder, and was ready, able, and willing to carry out and perform the contract, and was desirous of so doing; but the traction company was about to discontinue the use of electrical current supplied by the power company and obtain from another source the power required for the operation of its railway. The power company sued for specific performance, and the traction company contended that, as the power company's obligations called for the continued operation of its plant through a term of years, involving the rendition of skilled personal services and the outlay of considerable sums of money, the contract could not be specifically enforced against the power company, and hence lacked the mutuality of remedies necessary to its specific enforcement. *Held*, that a decree enjoining the traction company from taking electrical current from any person, firm, or corporation other than the power company during the term of the contract, so long as the power company performed the obligations imposed upon it by the contract, did not involve the inequitable result, the avoidance of which is the prime object of the rule as to mutuality of remedies, since, in so far as the power company had performed, the traction company was safe from any possible injury due to its lack of an efficient remedy to compel performance by the power company, while any material injury which it might sustain from the lack of such remedy was effectually avoided by making its obligation to continue performance dependent upon a continuance of performance by the power company.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 9–11; Dec. Dig. ☞6.]

3. Specific Performance ☞127(1)—Relief Awarded—Form of Decree.

Where a traction company contracted to take its supply of electrical current from a power company for 15 years, the District Court did not exceed the broad powers permissible to be used in affording specific performance, or prejudicially abuse or mistakenly exercise its discretion as to the use of such powers by enjoining the traction company from taking electrical current from any party other than the power company during the period covered by the contract, so long as the power company performed the obligations imposed upon it by the contract; the result of this being to require the traction company specifically to perform its obligations.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 406, 407, 409, 410; Dec. Dig. ☞127(1).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Middle District of Alabama; Henry D. Clayton, Judge.

Suit by the Montgomery Light & Water Power Company against the Montgomery Traction Company. Decree in favor of plaintiff (219 Fed. 963), and defendant appeals. Affirmed.

See, also, 191 Fed. 657.

Ray Rushton, of Montgomery, Ala., and Gregory L. Smith, of Mobile, Ala. (Rushton, Williams & Crenshaw, of Montgomery, Ala., on the brief), for appellant.

B. P. Crum and John R. Tyson, both of Montgomery, Ala. (Steiner, Crum & Weil, of Montgomery, Ala., and Frueauff & Robinson, of New York City, on the brief), for appellee.

Before PARDEE and WALKER, Circuit Judges, and FOSTER, District Judge.

WALKER, Circuit Judge. The averments of the bill in this case show that at the time it was filed, in September, 1911, the defendant (the appellant here), was receiving from the plaintiff and using electrical current for the operation of its railway under a contract then existing between them, providing for the supply by the plaintiff and the use by the defendant of such current for a period of 15 years from February 1, 1903; that the plaintiff had complied with its obligations under said contract, and was ready, able, and willing to carry out and perform every term or stipulation thereof required of it, and was desirous of so doing; and that the defendant, in utter disregard of its contractual obligations to the plaintiff, was about to violate the terms of said contract on its part by discontinuing the use of the electrical current supplied by the plaintiff, and obtaining from another source the power required for the operation of its railway. The bill contained a prayer for the specific relief of an injunction restraining the defendant from disconnecting its wires or lines from the plaintiff's power plant and from receiving or using electrical current from any person or party whomsoever other than the plaintiff under and in accordance with the alleged existing contract.

The right of the plaintiff to have the relief sought was contested upon a number of grounds, some presented by demurrers to the bill, and others presented by issues of fact tendered by the answer, which was filed after the demurrers to the bill were overruled. By the final decree now presented for review the appellant was "perpetually enjoined and restrained from taking direct electrical current from any person, firm, or corporation other than the complainant, during the period covered by the contract involved here, as prayed for, so long as complainant performs the obligations imposed upon it by the terms of said contract." Opinions accompanied the overruling of the demurrers to the bill and the rendition of the final decree. Montgomery Light & Water Power Company v. Montgomery Traction Company, 191 Fed. 657; Id., 219 Fed. 963.

[1] According to the averments of the bill, the alleged existing contract between the parties was in part evidenced by a written instrument, signed by each of them and dated January 30, 1909. It is in-

sisted that that instrument was without legal validity because, at the time of its purported execution, the plaintiff, a New Jersey corporation, had not complied with the Alabama constitutional and statutory requirements which are made prerequisites to the existence of any power in such a corporation to transact any business in Alabama. Constitution of Alabama, § 232; Code of Alabama 1907, § 3642. It was disclosed by the evidence that, because of these provisions, the plaintiff, on January 30, 1909, was not qualified to transact business or to make a valid contract in Alabama, but that on June 11, 1909, this disqualification was removed by a compliance with the prescribed requirements. The averments of the bill show that, up to the time it was filed in September, 1911, there was a continuing recognition by each of the parties of the existence of the alleged contract, evidenced in part by the instrument of January 30, 1909, and the evidence adduced as to the dealings between the parties subsequent to June 11, 1909, after which date there was no disability to contract, evinces a mutual understanding or agreement between the parties to conform their dealings to the terms of the contract expressed in the instrument dated January 30, 1909. The conduct of the parties after the removal of the only legal obstacle standing in the way of the making of a valid contract between them had the effect of an adoption by them of the contract expressed in the instrument dated January 30, 1909. While the parties could not by any act of ratification make a void contract a valid one from the time it was undertaken to be made, they could, when each of them was duly qualified to contract, elect to adopt as the whole or a part of the contract by which their dealings were to be governed what was expressed in an instrument which was ineffectual at the time it was signed. Turner Construction Company v. Union Terminal Company, 229 Fed. 702, —— C. C. A. —— (January 18, 1916, U. S. C. C. A., 5th Circuit). This is what the evidence shows was done.

[2] It is insisted that the lack of mutuality in the remedies available to the respective parties to the contract relied on required a denial of the relief which was granted by the decree appealed from. The injunction decreed had the effect of requiring specific performance by the defendant. It is pointed out that the obligations of the plaintiff under the contract in question call for the continued operation through a term of years of an electrical power plant, involving the rendition of skilled personal services and the outlay of considerable sums of money, acts the future performance of which is incapable of being efficiently compelled by any decree that may be rendered. We understand that the prime motive underlying the requirement of mutuality in specific performance cases is the avoidance of the inequity of compelling such performance by one party to a contract at the instance of the other party when the latter may escape performance of the obligations which the contract imposes upon him. The rule is a recognition of the reciprocal feature of the duty of specific performance and that equity requires that an enforced continued performance by one party should be conditioned upon antecedent or concurrent performance by the other party as contemplated by the contract. The ques-

tion then is: Did the decree have the effect of depriving the defendant of the protection which is afforded by the application of the rule mentioned?

At the time the suit was brought, the dealings between the parties had been carried on for many years under the contract relied on. The bill averred that the plaintiff had complied with its obligations under the contract; that it was ready, able, and willing to carry out and perform every term or stipulation thereof, and was desirous of so doing. The master found that the evidence supported the substantial truth of those averments, and that since the filing of the bill the plaintiff had continued to perform its obligations under the contract. The court by its decree, rendered more than 4 years after the bill was filed and when the contract had only a little over 3 of the 15 years of its term to run, sustained these findings, and required specific performance by the defendant only "so long as complainant performs the obligations imposed upon it by the terms of said contract." However unenforceable the plaintiff's obligations under the contract may have been, in so far as it has already performed those obligations, the defendant is safe from any possible injury due to the lack of an efficient judicial remedy to compel specific performance by the plaintiff. One to whom performance is voluntarily rendered does not suffer from the lack of a remedy to which he has no occasion to resort. Mississippi Glass Company v. Franzen, 143 Fed. 501, 74 C. C. A. 135, 6 Ann. Cas. 707; 36 Cyc. 631.

The plaintiff's conduct in the past, both before and after the bill was filed, and its manifest interest in securing performance by the defendant, a result to be attained only by its compliance with the terms imposed upon it by the decree, persuasively indicate the improbability of the defendant having any occasion to seek the enforcement of a specific performance by the plaintiff, even if an efficient remedy for the accomplishment of that end was available. However that may be, by the terms of the decree appealed from the defendant is left at liberty to cease performance whenever a default by the plaintiff occurs. Specific performance by it is required only so long as there shall be like performance by the plaintiff. It seems that where, as in the instant case, the reciprocal obligations of the parties to the contract in question are concurrent, the continuance of the obligation of each to perform his part being dependent upon continued performance by the other, any material injury which otherwise might be sustained by the defendant, of whom performance is required, in consequence of his not having an efficient remedy for coercing future performance by the plaintiff, is effectually avoided by making the defendant's obligation to continue performance dependent upon a continuance of performance by the plaintiff. The conclusion is that the circumstances of the instant case fairly negative the conclusion that the decree appealed from involved the inequitable result, the avoidance of which is the prime object of the rule as to mutuality of remedies.

[3] We do not assent to the contention of the counsel for the appellant that there is such a dissimilarity between the facts of the instant case and those dealt with in the controlling decisions shown by

the opinions rendered in the District Court to have been relied upon to support the action evidenced by the interlocutory and final decrees as to render those authorities inapplicable. We are not of opinion that, in ordering the injunctions issued under those decrees, which had the practical effect of coercing the specific performance of the contract by the defendant, the court exceeded the broad powers permissible to be used in affording relief of that nature, the use or nonuse of which powers is left to the sound judicial discretion of the court, to be exercised with reference to the particular facts of the case dealt with. A conclusion that that discretion has been prejudicially abused or mistakenly exercised in this case hardly would be reconcilable with the fact, which we think the record as a whole discloses, that the net result of what has been done by the court is that the defendant, since the filing of the bill in 1911, has been required specifically to perform its obligations under the contract, in the meantime receiving, or being afforded the opportunity to receive, the benefits to which it was entitled from a like concurrent performance by the plaintiff of its obligations under the contract, and is required to continue performance only so long as the plaintiff shall persevere in performing its part. That such a result does not involve injury or damage to the defendant of which it justly may complain seems apparent.

We have given careful consideration to the several assignments of error which have been insisted on. The result is that we conclude that it has not been made to appear that any reversible error has been committed. In view of what has been said in the opinions rendered in the District Court, it is not believed that any useful purpose would be served by a further discussion by us of the questions involved in the case.

The decree appealed from is affirmed.