395 So.2d 54 (1981)
Roland DAY
v.
RAY E. FRIEDMAN & COMPANY, a corporation.
No. 79-94.
Supreme Court of Alabama.
February 6, 1981.
Rehearing Denied March 6, 1981.
*55 Carl E. Chamblee, Birmingham, for appellant.
Carleton P. Ketcham, Jr. of Dominick, Fletcher, Yeilding, Acker, Wood & Lloyd, Birmingham, for appellee.

On Application for Rehearing
MADDOX, Justice.
The application for rehearing is granted; the original opinion in this cause is withdrawn and the following opinion is substituted therefor.
Defendant below appeals from a summary judgment rendered in favor of the plaintiff on its complaint and from a summary judgment which dismissed defendant's counterclaim. We affirm in part, reverse in part, and remand.
Plaintiff Ray E. Friedman & Company was, on the dates material to this action, an Illinois corporation, properly licensed by all relevant federal authorities to conduct the business of a commodities broker. In early 1974, Friedman was desirous of opening a branch office in Birmingham. On March 12, 1974, Friedman entered into a written contract with the defendant Day under which Day would act as an account executive for Friedman in a new Birmingham branch office. At the time the contract was executed, Friedman had not qualified to do business in Alabama, but on April 14, 1974, Friedman qualified to do business in Alabama.
The contract between Friedman and Day provided that Day would guarantee to Friedman payment of any amounts as a result of deficiencies in the accounts of customers procured by Day due to losses suffered by customers trading on margin.[1]
On September 30, 1974 Day and Friedman mutually agreed to sever their relationship. At that time, Day owed Friedman a total of $8,745.34. Part of this *56 amount consisted of debts Day incurred as a result of personal losses while trading in commodities, and the balance consisted of the debts of customers for which Day became liable under the guaranty provisions of the contract. It is apparent that under the rules of the commodities exchanges a licensed broker must settle his debts and affairs with his employer before he may transfer his license to another brokerage house. On October 18, 1974, Day executed a six-month non-interest bearing promissory note for the amount of his indebtedness in settlement of his obligations to Friedman.
The amount of indebtedness had been reduced to $5,661.87 at the time suit was filed because Day and some of his customers had made payments which were applied on the indebtedness.
Friedman filed suit for the outstanding amount due. Day answered and alleged, inter alia, that he was not guilty of the matters alleged in the complaint and that the promissory note was void because of a failure of consideration on the theory that the underlying contractual obligation was void because it was entered into in Alabama at the time when Friedman was a foreign corporation which was not licensed to do business in Alabama. The record shows that Day also claimed that the note was executed under duress because it was necessary for him to execute the note in order for him to obtain a release of his license to act as a broker on the commodities exchange. Day counterclaimed and demanded monetary damages for misrepresentation by Friedman in inducing him to enter into the brokerage contract. He also claimed brokerage fees and commissions due, and, further claimed that Friedman tortiously interfered with his contractual relations.
In granting Friedman summary judgment for the amount claimed under the promissory note, the trial judge correctly stated "that a note sued on is prima facie evidence of sufficient consideration for the execution thereof, and the burden of proof is on the defendant to show there was no consideration." Ladner & Company Real Estate Sales, Inc. v. Smith, 277 Ala. 185, 168 So.2d 217 (1964). Day acknowledged in his deposition that it was his signature which appeared on the note. That being the case, the burden was on him to submit a scintilla of evidence in support of his defense that there was a failure of consideration either because the underlying contract of employment was void or the promissory note was executed under duress, as he claimed. The trial court found there was no material issue of fact on the question of whether Day had recognized, adopted and validated the contract during the period after Friedman qualified to do business in Alabama.
In his order, the trial judge opined:
"[I]t is not disputed that Friedman did qualify to do business in Alabama on April 12, 1974, and that Day continued working for Friedman under the employment agreement until September or October of the same year. Under these circumstances, the contract did become valid after Friedman had qualified to do business."
The trial judge, citing Montgomery Traction Co. v. Montgomery Light and Water Power Company, 229 F. 672, 675 (5th Cir. 1916), (cert. denied 242 U.S. 628, 37 S.Ct. 14, 61 L.Ed. 536), held:
"Following Friedman's qualification to do business on April 12, 1974, Day continued as an employee of Friedman. When he terminated his employment with Friedman, Day executed a promissory note in the principal amount of $8,745.34, recognizing his obligation to Friedman with respect to his own and his customers' debit balances. From the undisputed evidence in this case, the Court concludes that after Friedman had qualified to do business in Alabama, Day by his conduct recognized and adopted the employment agreement entered into by him with Friedman. It is then no defense to Friedman's claim under the note that Friedman had failed to qualify to do business in Alabama at the time the employment agreement was executed. While Day in his supplementary affidavit denies that any part of the balance due under the *57 note represents his own debit account balance, he does not deny that the same represents debit balances of customers procured by him for which he is liable to Friedman under the terms of the employment agreement. There is then ample consideration for the execution of the note...."
We agree with the trial court's treatment of the question of whether the contract was void because Friedman was not qualified to do business in Alabama. Since it was clear from the evidence that Friedman qualified to do business in Alabama on April 12, 1974, and that Day continued his employment with the Company after that date, there was no genuine issue of material fact concerning whether the contract was void because Friedman had not qualified to do business in Alabama when the contract was made; however, that was not the only issue raised by the parties bearing upon Friedman's ultimate ability to recover on the promissory note.
Day's counsel, in brief, and at oral argument, asserted that summary judgment on the promissory note was improper because there existed a genuine issue of material fact on the question of whether he executed the note under duress. As we have already stated, Day claimed that the note was executed under duress because it was necessary for him to do so in order to obtain a release of his license to act as a broker on the commodities exchange. In fact, the trial court, in summarizing the evidence, recognized that Day claimed in his affidavit, which he filed in opposition to the motion for summary judgment, that he acted under "duress." Consequently, there was at least a scintilla of evidence on the "duress" question.
The commentary to the Uniform Commercial Code in Alabama, Code 1975, § 7-3-305, c. 6, states:
"Duress is a matter of degree. An instrument signed at the point of a gun is void, even in the hands of a holder in due course. One signed under threat to prosecute the son of the maker for theft may be merely voidable, so that the defense is cut off. Illegality is most frequently a matter of gaming or usury, but may arise in many other forms under a great variety of statutes. The statutes differ greatly in their provisions and the interpretations given them. They are primarily a matter of local concern and local policy. All such matters are therefore left to the local law. If under that law the effect of the duress or the illegality is to make the obligation entirely null and void, the defense may be asserted against a holder in due course. Otherwise it is cut off."
Since duress is a matter of degree, it is ordinarily a matter for the finder of fact.
As we have indicated, the trial court was correct in finding that the contract was not void on the ground that Friedman had not qualified to do business in Alabama. Nevertheless, the trial court should not have granted Friedman's motion for summary judgment, because there was at least a scintilla of evidence that Day executed the promissory note under duress. Furthermore, Day, in his deposition, contended that before he signed the contract, an official at Friedman told him not to worry about the guaranty clause, which forms the basis for the claim Friedman makes against Day, and for which Friedman claims Day executed the note. Day testified in his deposition, which is a part of the record on appeal, as follows:
"Q Okay. But you signed it [the contract] and sent it back to Chicago, did you not?
"A Yes. Before signing it, however, we were very much upset over the fact that there were one or two things in there that were not in accordance with what we had talked about in Chicago. Primarily the fact that debit balances would be our responsibility. We were sitting at the dinner table at some restaurant up there, Brown was there, Howard Fisher was there, Ditma, I don't recall if Schuf was there or not, but Darryl Bland and I, we had a large round table, and Ditma plainly made the statement that after all, you know, the real responsibility of debit balances is ours, not yours. As I remember *58 distinctly coming back on the plane I was elated by that possibility because due to the speculative nature of our business that could be a major problem.
* * * * * *
"A And so when the contract arrived and I saw this, I recall that we picked up the phone and talked to them about it. Said, you know, that is not what we agreed to. After all, by now we had the expenses of the office installation and had already taken the big leap so to speak. And were transacting business. Oh, but don't bother about that, that is no problem. We are going to make, you know, lots of money. We are going to have a long career together. Forget about that, you know. Well, in view of the fact that we had continued already in business, we said well, you know, we really don't have any alternative at this juncture. So I signed it and sent it back.
"Q Who was that conversation with?
"A Tom Ditma."
We now consider whether the trial court correctly granted summary judgment for Friedman on Day's counterclaim.
Count I of Day's counterclaim is grounded upon the allegation that Friedman misrepresented to Day that the employment contract was a valid and binding agreement. Because we have already determined that the agreement was not void on the ground that Friedman had not qualified to do business in Alabama, we hold that the court did not err in granting summary judgment on Count I of Day's counterclaim.
The second and third counts of the counterclaim alleged that Friedman owed Day money for brokerage fees and commissions and that Friedman willfully interfered with existing contractual relations between Day and former customers of Day. The evidence is clear from the parties' respective affidavits that they are in serious dispute concerning monies allegedly owed by Friedman. In addition, the parties are in serious disagreement as to whether Friedman made certain payments it says it made. These conflicting assertions and accusations clearly raise a scintilla of evidence in support of the second count of Day's counterclaim.
Likewise, we hold that Friedman failed to show that there were lacking any conceivable circumstances under which Day might prevail on the third count of his counterclaim. The evidence shows that several customers interacted with Day on an individual basis prior to his employment with Ray E. Friedman & Company. After becoming an employee of Friedman, Day continued these ongoing business relationships. We, therefore, hold that there existed at least a gleam or glimmer of evidence indicating that during Day's employment with Friedman various persons interacted with Day as an individual, and not as an employee of Friedman. Whether these individuals continued to be Day's customers or became Friedman's customers was a question for the jury to decide.
On the basis of the above reasoning, we hold that the judgment of the trial court is due to be affirmed in part, reversed in part, and remanded.
APPLICATION FOR REHEARING GRANTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
FAULKNER, JONES, SHORES and BEATTY, JJ., concur.
TORBERT, C. J., and ALMON and EMBRY, JJ., dissent.
ADAMS, J., not sitting.
TORBERT, Chief Justice (dissenting).
I dissent in part from the substituted opinion.
I agree with Justice Maddox's statement in his substituted majority opinion that the trial court was correct in granting a summary judgment as to Day's assertion that the underlying employment contract was void because Friedman & Co. was not qualified to do business in Alabama when it was entered into. We part company, however, as to the issues of whether there was duress involved in the execution of the promissory *59 note, whether there was a parol agreement not to enforce the guaranty clause, whether Friedman owed Day money for brokerage fees and commissions, and whether Friedman willfully interfered with existing contractual relations between Day and former customers of Day. As to the foregoing issues, I would uphold the trial court's grant of summary judgment.
In order for a summary judgment to be properly granted, there must be no genuine issue of material fact in dispute, and the application of the law to the undisputed facts must be correct. Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190 (Ala.1978). Careful study of each of the issues named heretofore reveals that there is no dispute between the parties as to any material fact. Therefore, if the trial judge applied the law correctly, his grant of summary judgment should be upheld.
Appellant claims initially that the promissory note is unenforceable because it was executed under duress. The facts relevant to the alleged duress are not in dispute. The employment contract in effect between Day and Friedman & Co. incorporated the rules of the Commodities Exchange. Those rules required that before a brokerage firm could release the license of a broker leaving its employ, any outstanding accounts between the two parties must be settled. Pursuant to this rule, the contract also contained a guaranty agreement, whereby Day agreed to be responsible for the debts incurred by his customers in their accounts. When Day resigned from Friedman & Co., Friedman sought to enforce the rule and the contract provision, and required Day to execute a non-interest-bearing promissory note to cover the debts incurred by Day's customers and by Day personally. Day argues that these acts constitute duress sufficient to void the contract. Williston, in his treatise on contracts, states that in order to constitute duress, "[t]he alleged pressure must be wrongful." 12 S. Williston, A Treatise on the Law of Contracts § 1606 (3d ed. 1970). Furthermore,
[A] threat to bring a civil action or to resort to remedies available under a contract is not such duress as will justify rescission of a transaction induced thereby. This is true even though it is subsequently determined that there is no legal right to enforce the claim, provided the threat is made in good faith, i. e., in the reasonable belief that a possible cause of action exists.
Id. (footnotes omitted). See, United States v. Burgreen, 591 F.2d 291 (5th Cir. 1979); Lehman, Durr & Co. v. Shackleford, 50 Ala. 437 (1874). There was not a scintilla of evidence presented by Day that Friedman & Co. had no legal right to enforce the contract or the Commodities Exchange rules, much less that they had not even a "reasonable belief that a possible cause of action exist[ed]." S. Williston, supra.
Secondly, Day contends that there was a parol agreement not to enforce the guaranty clause. Assuming, arguendo, that Alabama law would permit the introduction of such an agreement, see, Hibbett Sporting Goods Inc. v. Biernbaum, 391 So.2d 1027 (Ala.1980), I do not agree that the conversation alluded to by Day constitutes such an agreement. Day testified in his deposition that in a conversation with Tom Ditma, an officer of Friedman & Co., Ditma said in reference to the guaranty clause, "Oh, but don't bother about that, that is no problem. We are going to make, you know, lots of money. We are going to have a long career together. Forget about that, you know." After this conversation Day signed the contract and returned it to Friedman & Co. Even taking Day's testimony regarding his conversation with Ditma as true, there is no showing of a parol agreement not to enforce the guaranty clause. Ditma told Day not to worry because they were "going to have a long career together," not that Friedman & Co. would not enforce its contractual rights if the situation arose. I fail to see how he could have relied on these statements to his detriment.
Day asserts further that he was owed money for brokerage fees and commissions by Friedman & Co. Day presented no evidence in support of this allegation. In a hearing on a motion for summary judgment, *60 failure of a party opposing the motion to offer any affidavits or other testimony to contradict evidence presented by the moving party leaves the court no alternative but to consider such evidence uncontroverted. Mims v. Louisville Title Ins. Co., 358 So.2d 1028 (Ala.1978); Donald v. City National Bank of Dothan, 295 Ala. 320, 329 So.2d 92 (1976). Furthermore, Day testified in his deposition that he had been given credit for brokerage fees and commissions paid to Friedman & Co. by Day's customers, and that he was not aware of any other payments for which he had not been given credit. I fail to see a dispute over a material fact as to this issue.
Day contends finally that Friedman & Co. has unlawfully interfered with existing contractual relationships between Day and customers who "interacted with Day as an individual" and not as an employee of Friedman. Unfortunately, this issue fails to state a claim for which relief may be granted, and was properly dismissed by the trial judge in the hearing for a motion for summary judgment. Alabama law recognizes only two types of tortious interference with contractual relations. One is where an employee is enticed to leave his employment, and the other is where a party has been "procured against his will or contrary to his purpose, by coercion or fraud, to break his contract with another." Erswell v. Ford, 208 Ala. 101, 103, 94 So. 67, 69 (1922). Also see, Homa-Goff Interiors, Inc. v. Cowden, 350 So.2d 1035 (Ala.1977). Neither occurrence is involved here; therefore, the trial court was correct in granting summary judgment as to this issue.
Although summary judgments are often difficult to uphold in view of the scintilla rule, I believe that the trial court properly applied that rule to the present case. I would affirm the summary judgment, and I therefore dissent in part from the substituted opinion.
ALMON and EMBRY, JJ., concur.
NOTES
[1] GUARANTEE OF ACCOUNT

ACCOUNT EXECUTIVE guarantees the accounts of any and all customers procured by him through the Branch Office for FRIEDMAN, and agrees to reimburse FRIEDMAN for any losses sustained by it as a result of debit accounts or otherwise of customers procured by him through the Branch Office. ACCOUNT EXECUTIVE agrees to give FRIEDMAN a first lien against any funds due ACCOUNT EXECUTIVE by FRIEDMAN in the event that any customer's account falls into debit as a result of losses or otherwise....