422 So.2d 764 (1982)
John G. RALLS
v.
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ANDALUSIA, a Corporation.
80-752.
Supreme Court of Alabama.
September 24, 1982.
Rehearing Denied November 19, 1982.
Ab Powell, III of Powell & Powell, Andalusia, and William D. Melton, Evergreen, for appellant.
*765 W. Sidney Fuller of Tipler, Fuller & Sikes, Andalusia, for appellee.
ALMON, Justice.
This case involves a dispute over a loan commitment issued by First Federal Savings and Loan Association of Andalusia (First Federal) to John G. Ralls. The defense to Ralls's action is accord and satisfaction.
Ralls acquired a franchise permitting him to operate a Days Inn Motel. In 1978, he began investigating the feasibility of constructing and operating a motel in Evergreen, Alabama. He discussed construction loans with several lending institutions and on August 28, 1978, Ralls submitted a loan application for $600,000 to First Federal. He discussed the proposed loan with Miss Maggie Rodgers, the Executive Vice-President and Managing Officer of First Federal. Miss Rodgers testified that at the time the loan application was made, she told Ralls there would be an eight-month completion date on any construction loan. On October 27, 1978, First Federal sent Ralls a commitment letter stating in part:
"The loan was approved for 20 years at 10% interest rate. The 10% interest rate is guaranteed subject to your paying 1% of our 2% initial service charge." (Emphasis added.)
The letter made no mention of a completion date.
On December 21, 1978, Ralls met with Miss Rodgers to accept the commitment. At that time he paid $6,000 representing 1% of the initial 2% service charge. Miss Rodgers testified she made a notation on her copy of the commitment letter that the completion date would be eight months from December 21, 1978, and also brought this to Ralls's attention. Miss Rodgers made another notation on the letter stating that $6,000 had been paid "guaranteeing [the] 10% rate."
Ralls testified that he had not been told of the completion date at the time of the loan application and that it was only mentioned by Miss Rodgers after he had paid the $6,000 on December 21, 1978. His testimony as to the completion date was as follows:
"Well, I went over to pay six thousand dollars and after she wrote the check out, she said, `we're going to have to put a date on it,' and she came up with the August 21st and I told her that I had never built a motel and what if I didn't get it finished by then and she said, `we've never failed to give anybody an extension yet,'that's what she told meso I didn't worry about the date...."
Ralls also testified that he did not know the completion date had been put on First Federal's copy of the commitment letter until shortly before the trial and that the first time a completion date was mentioned was after he had paid the $6,000. He further testified that he told First Federal that he did not want the loan unless it would be at the 10% interest rate.
Miss Rodgers filled out the check and check stub for Ralls when he paid the 1% fee. On the check stub she wrote: "1% guaranteeing 10% interest for 600,000." On the check itself she wrote "1%10% interest."
On January 9, 1979, Miss Rodgers sent a letter to the Conecuh County Bank stating First Federal had received $6,000 from Ralls that guaranteed him a 20-year loan at 10% interest. The letter authorized interim financing through the Conecuh County Bank. This letter made no mention of a completion date.
On April 12, 1979, Miss Rodgers notified Ralls that the First Federal board of directors did not approve extension of his 10% loan past August 21, 1979, but would be happy to extend the loan for a few months at the prevailing interest rate at the time of closing.
When it became apparent that the project would not be completed by August 21, 1979, Ralls wrote Miss Rodgers on August 5, 1979, asking for an extension. Miss Rodgers wrote Ralls on August 9, 1979, stating the board of directors could not extend the loan at 10% but could extend the *766 loan commitment until the motel was completed, subject to the prevailing interest rate at the time of closing.
The motel was not completed until a few days before the loan was closed at 12% on December 5, 1979. Interest rates at that time had increased considerably.
Ralls subsequently filed suit against First Federal, claiming breach of contract, fraud, and misrepresentation and deceit. At the close of all the evidence, the trial judge granted First Federal's motion for a directed verdict.
Ralls contends the trial court misinterpreted the law when it held that the loan closing on December 5, 1979, at 12% rather than 10%, constituted an accord and satisfaction as a matter of law.
Ralls contends his acceptance of the loan at 12% interest could not operate as an accord and satisfaction because he entered into the loan agreement under duress. The gist of Ralls's argument is that at the time he accepted the loan, he was in such dire need of funds, as a result of the actions of First Federal, that he had no choice but to accept the loan no matter what the interest rate. Specifically, the question presented is whether economic duress can be successfully asserted to defeat the defense of accord and satisfaction.
The economic duress is asserted not to vitiate a contract, but as a defense to the assertion by First Federal that the signing of the 12% loan effected an accord and satisfaction. Economic duress is, under proper circumstances, a viable legal principle.
"Many authorities recognize the doctrine that economic duress or business compulsion vitiates a contract induced thereby....
"...
"While the doctrine of economic duress or business compulsion is constantly being expanded by the courts, it may be invoked only to prevent an injustice and not to accomplish an injustice. The doctrine applies only to special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract, as where extortive measures are employed, or improper or unjustified demands are made, under such circumstances that the victim has little choice but to accede thereto."
17 C.J.S. Contracts § 177 (1963) (citations omitted). We see no reason why courts should recognize economic duress to entirely invalidate a contract but not to avoid a defense of accord and satisfaction.
Since duress is ordinarily a matter for the jury, see, Day v. Ray E. Friedman & Company, 395 So.2d 54 (Ala.1981), Ralls claims the trial court erred in directing a verdict for First Federal. We are inclined to agree.
In order to survive a motion for a directed verdict, the contestant must present a scintilla of evidence. Bardin v. Jones, 371 So.2d 23 (Ala.1979); Rule 50(e), A.R.C.P. The reviewing court must examine the record to see if there exists a scintilla of evidence in support of the complaint. Perdue v. Mitchell, 373 So.2d 650 (Ala.1979).
The evidence presented by Ralls, viewed in a light most favorable to him, tended to show that First Federal guaranteed him a 10% interest rate. The only limitation on that guarantee was the completion date. However, the evidence concerning the completion date was in conflict. Ralls testified that Miss Rodgers told him they would have to put a limitation date on the loan but not to worry about it because they had never refused an extension to a loan commitment. Miss Rodgers's testimony was otherwise, but this is the type of factual dispute that should be submitted to the jury. If the jury found Miss Rodgers had in fact represented to Ralls that there would be no problem getting an extension, then it would follow that Ralls was justified in committing himself financially to the point where he had no choice but to later accept the loan regardless of the higher interest rate.
After reading the record and reviewing the evidence, we are of the opinion that Ralls presented a jury question in support of his theory of recovery. Therefore, it was *767 error to direct a verdict in favor of First Federal. Accordingly, the judgment appealed from is reversed and the cause is remanded for retrial.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.