**AIM LEASING CORPORATION, a corporation, Plaintiff-Appellant,**

v.

**HELICOPTER MEDICAL EVACUATION, INC., a corporation, LOR, INC., a corporation; Hewitte A. Thain: G. Russell Chambers, Albert J. Aucoin, Jr., Defendants-Appellees.**

No. 81–7604.

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1982.

Rehearing and Rehearing En Banc Denied Dec. 29, 1982.

---

Pritchard, McCall, Jones, Spencer & O'Kelley, Alexander W. Jones, Jr., Birmingham, Ala., Champ Lyons, Jr., Coale, Helmsing, Lyons, & Sims, Mobile, Ala., for plaintiff-appellant.

Charles L. Gregory, Atlanta, Ga., James E. Clark, Birmingham, Ala., for Helicopter, Lor and Chambers.

Michael D. Allday, New Orleans, La., for Aucion.

William A. Porteous, III, Glenn B. Adams, New Orleans, La., for Thian.

Before FAY and KRAVITCH, Circuit Judges, and YOUNG *, District Judge.

GEORGE C. YOUNG, District Judge:

This is a diversity action in which plaintiff Aim Leasing Corporation (Aim), a Delaware corporation, sued the defendants for breach of contract on a helicopter lease agreement entered into between Aim and defendant, Helicopter Medical Evacuation, Inc. (HME), a Louisiana corporation. The other defendants, LOR, Inc. (LOR), G. Russell Chambers, Albert J. Aucoin, Jr., and Hewitte A. Thian are guarantors of the lease agreement. Plaintiff appeals from the District Court's order granting summary judgment for all defendants based upon Aim's failure to qualify to do business in Alabama. For the reasons set forth below, we reverse.

I.

Aim is in the business of leasing helicopters and fixed wing aircraft. Its principal place of business is in Selma, Alabama, where it shares offices with its parent company. Aim's Selma office has been its principal and only place of business since its formation in 1979, and Aim has never maintained an office outside Alabama. HME was incorporated to provide medical evacuation services by helicopter in and around the Gulf of Mexico. Its main office is in New Orleans, Louisiana. Defendants LOR, Chambers, Aucoin, and Thian, guarantors of the lease agreement, are all non-residents of the State of Alabama.

In 1979 Aim entered into negotiations with HME to lease five helicopters to HME. Following meetings in California, Louisiana, and Texas, a lease agreement was executed in Grand Prairie, Texas on December

* Honorable George C. Young, U. S. District Judge for the Middle District of Florida, sitting    by designation.

19, 1979.[1] Subsequently, defendants LOR, Thian, Aucoin, and Chambers executed a guaranty of payment in which they assumed liability for "the payment and performance of any and all debts and obligations now owing by Helicopter Medical Evacuation, Inc. (herein called the H.M.E.) to Aim, and any and all debts and obligations hereafter contracted or incurred, and any and all debts and obligations now owing or hereafter contracted or incurred, by H.M.E. to Aim."[2] Although dated December 19, 1979, the original guaranty was later altered to provide for pro rata liability[3] and was delivered to Aim sometime in January, 1980.

Aim qualified to do business in Alabama on May 18, 1980. Subsequent thereto a series of modifications to the lease, denominated "schedules",[4] were executed by Aim and HME. The "schedules" identified additional equipment that Aim agreed to install on each helicopter and provided a method of financing for HME's purchase of this equipment. These subsequent documents expressly stated that they were "schedule[s] to that certain lease dated the 19th day of December, 1979, by and between the parties hereto, and made a part thereof."

HME made payments on the lease and "schedules" from approximately February of 1980 until November of 1980. For the month of November, 1980, HME made a partial payment leaving a balance due of approximately $35,000. Aim instituted the present litigation following HME's failure to make any additional payments under the lease agreement.

Prior to trial, Aim filed a motion for summary judgment with supporting affidavit and documents attached thereto. Defendants HME, Chambers, and LOR filed their response to plaintiff's motion and simultaneously filed a motion for summary judgment based upon Aim's failure to comply with Alabama's qualification statutes.[5] Notwithstanding its Local Rule providing that any party opposing a motion for summary judgment has thirty days within which to file a brief in opposition along with supporting documents, the district court, thirteen days later and without oral argument, granted summary judgment for the defendants in an order adopting almost verbatim the proposed order submitted by counsel for HME, LOR and Chambers.

Aim raises several points on appeal, including: (1) the lease agreement and subsequent schedules were not made or entered into in Alabama and are therefore not subject to Alabama's qualification statutes; (2) Aim is entitled to maintain this action be-

1. Grand Prairie was the plant site of Aerospatiale Helicopter Corporation, the manufacturer of the helicopters which HME was to lease from Aim. The five helicopters leased were accepted by HME on December 19, 1979, apparently simultaneous to the execution of the lease agreement.

2. The Guaranty of Payment further provides: "It is agreed that every term, provision and condition of every note or other evidence of debt executed by H.M.E. to AIM shall become a part of this obligation as if fully set out herein and shall bind the undersigned as if it were executed by the undersigned as the primary and individual obligation of the undersigned."

3. LOR, Inc.—51%; G. R. Chambers—20%; H. A. Thian, M. D.—25%; Albert J. Aucoin, Jr.—4%.

4. The equipment "schedules" modifying the original lease agreement are dated August 11, 1980 and October 8, 1980.

5. Section 10–2A–247(a) of the Code of Alabama provides in pertinent part:

"All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity...."

Section 40–14–4 of the Code of Alabama provides in pertinent part:

· "All contracts made in this state by any foreign corporation which has not first complied with the [qualification tax] provisions of sections 40–14–1 shall, at the option of the other party to the contract, be wholly void at the action of such foreign corporation ...."

cause subsequent to its qualification to do business in Alabama, the defendants have affirmed, recognized and adopted the initial lease agreement which was entered into prior to plaintiff's qualification to do business; (3) equitable grounds preclude the availability of the defense of nonqualification to these defendants; and (4) the application of Alabama's qualification statutes in this case impedes interstate commerce in contravention of the commerce clause of the Constitution.

## II.

Under Alabama law, a foreign corporation doing business in Alabama prior to its compliance with the state's qualification statutes may not enforce contracts or agreements made or entered into by it in Alabama. Ala.Code tit. 10, § 10–2A–247 (1980); *Sea Scaping Const. Co., Inc. v. McAtee*, 402 So.2d 919, 921 (Ala.1981). The bar created by Alabama's qualification statutes comprises "substantive" state law that we must apply in diversity suits in federal courts. 28 U.S.C. § 1652 (1976); *Jefferson Pilot Broadcasting v. Hilary & Hogan*, 617 F.2d 133, 135 (5th Cir. 1980); *Foxco Industries, Ltd., v. Fabric World, Inc.*, 595 F.2d 976, 980 (5th Cir. 1979).

Traditionally, we have approached the Alabama qualification statutes with a two-step inquiry: (1) is the foreign corporation doing business in Alabama, and (2) if so, does the application of Alabama law under the circumstances of the case before us impede interstate commerce in violation of the commerce clause of the Constitution. *Foxco, supra*, at 980; *SAR Mfg. Co. Inc. v. Dumas Bros. Mfg. Co.*, 526 F.2d 1283, 1284 (5th Cir. 1976). In this case, however, we find that even assuming Aim was doing business in Alabama so as to initially invoke the qualification statutes' bar to suit, the defendants, by their conduct subsequent to the execution of the lease agreement and subsequent to Aim's qualification to do business in Alabama, have recognized and adopted the lease agreement so as to preclude the application of the door closing statutes. *Day v. Ray E. Friedman & Co.*, 395 So.2d 54 (Ala.1981);[6] *Montgomery Traction Co. v. Montgomery Light & Water Power Co.*, 229 F. 672 (5th Cir.), *cert. denied*, 242 U.S. 628, 37 S.Ct. 14, 61 L.Ed. 536 (1916).

Defendants do not dispute that subsequent to Aim's qualification to do business

---

**6.** In *Day*, the Alabama Supreme Court cited with approval *Montgomery Traction Co., v. Montgomery Light & Water*, 229 F. 672 (5th Cir.), *cert. denied*, 242 U.S. 628, 37 S.Ct. 14, 61 L.Ed. 536 (1916), an early opinion of this court wherein we held that conduct of the parties subsequent to qualification that amounts to an adoption of the previously void agreement will preclude the application of the qualification statutes' bar to suit. In *Day* defendant entered into a written employment contract with plaintiff wherein defendant was to serve as plaintiff's account executive in the commodities firm's Birmingham office. At the time the employment contract was executed, plaintiff had not qualified to do business in Alabama. Plaintiff qualified to do business in Alabama about a month later.

One of the terms of the original contract required defendant to guarantee to plaintiff payment of any deficiencies in the accounts of customers procured by defendant due to losses suffered by these customers trading on margin. Plaintiff and defendant subsequently mutually agreed to terminate their relationship. Pursuant to the guaranty provisions of the original employment contract, defendant was required to execute a promissory note to the foreign corporation upon his termination evidencing his outstanding indebtedness at that time.

Suit was subsequently filed in state court by the foreign corporation on the promissory note. Defendant argued that the promissory note was void due to lack of consideration on the grounds that the underlying contractual obligation was void because it was entered into in Alabama prior to the foreign corporation's compliance with Alabama's qualification statutes. The trial court rejected defendant's argument finding that by his conduct subsequent to plaintiff's qualification to do business in Alabama defendant had recognized, adopted, and validated the previous employment contract. The Alabama Supreme Court affirmed and cited with approval the trial judge's finding that:

"[I]t is not disputed that Friedman did qualify to do business in Alabama on April 12, 1974, and that Day continued working for Friedman under the employment contract agreement until September or October of the same year. Under these circumstances, the contract did become valid after Friedman had qualified to do business."

395 So.2d at 56–57.

in Alabama, the parties to this action executed several modifications or "schedules" to the original lease agreement. By their express terms these "schedules" recognized the existence of the December 19, 1979 lease agreement and constituted extensions of the parties' obligations thereunder. HME continued to make payments and maintain insurance on the helicopters pursuant to the terms of the original lease agreement and its modifications for several months following Aim's compliance with Alabama's qualification statutes. In addition, the record reveals that subsequent to Aim's qualification to do business, HME executed certificates of acceptance for the helicopters after they were outfitted with additional medical, mechanical, and navigational equipment. The new certificates of acceptance expressly acknowledged that the aircraft were accepted as conforming to the requirements of the original lease agreement and its modifications.

Under these circumstances we find that after Aim qualified to do business in Alabama, defendants by their conduct recognized and adopted the original lease agreement executed December 19, 1979. It is, therefore, no defense to Aim's claim under the lease agreement that Aim had failed to qualify to do business in Alabama at the time the agreement was executed. *Day, supra,* at 56–57. *See also Id.* at 58 (Torbert, dissenting).

Alabama's qualification statutes are penal in nature and are in derogation of the common law; thus, they are to be strictly construed. *First Bank of Russell County v. Wells,* 358 So.2d 435, 437 (Ala.1978); *Linton & Co., Inc. v. Robert Reid Engineers, Inc.,* 504 F.Supp. 1169, 1173 (M.D.Ala.), *aff'd,* 664 F:2d 295 (11th Cir. 1981). Our finding in this case is consistent with Alabama's policy of strict construction. It is also consistent with the statute's declaration that the qualification requirement is not to be construed so as to "abrogate the equitable rule that he who seeks equity must do equity." [7] Code of Alabama, tit. 10, § 10–2A–247 (1980); *Wells, supra,* at 437 (refusing to apply qualification statute to bar suit where to do so would unjustly enrich defendant).

Because we find that Alabama's qualification statutes do not bar Aim from maintaining the present action, it is unnecessary for us to determine whether application of Alabama law under the circumstances of this case impedes interstate commerce in violation of the commerce clause of the Constitution. It is also unnecessary for us to address Aim's remaining claims of procedural irregularity in the disposition of defendants' motions for summary judgment below. The judgment appealed from is reversed and remanded.

REVERSED AND REMANDED.

---

7. Two of the defendants, HME and LOR, are foreign corporations. These defendants contend that Aim's negotiation and execution of the HME lease agreement resulted from business transactions which took place in Alabama. Based in part upon certain telephone conversations, letters, and personal conferences between Aim and the defendants or representatives of defendants in the State of Alabama, defendants successfully argued before the court below that the execution of the helicopter lease agreement resulted from Aim's unlawful business activity in Alabama. However, officers of HME and LOR were parties to several of these pre-agreement transactions at a time when neither defendant was qualified to do business in Alabama. Only defendant LOR has subsequently complied with Alabama's qualification statutes. To enable these foreign corporations to invoke the bar of the qualifications statutes when their activity in Alabama prior to execution of the lease agreement was arguably also in violation of Alabama law would contravene the statute's dictate that Alabama's door closing law is not to be construed so as to "abrogate the equitable rule that he who seeks equity must do equity." Code of Alabama, tit. 10, § 10–2A–247 (1980).