Gerald R. McNairy, a contractor, cleared and graded 647 acres owned by defendant Sugar Creek Resort, Inc. ("Sugar Creek"). McNairy sued Sugar Creek to recover by a mechanic's lien the amount due under his contract with Sugar Creek. McNairy also named Nan M. Moyers and C S Family Credit as defendants, because these two parties hold mortgages on the land cleared. The Circuit Court of Limestone County granted Sugar Creek's motion for summary judgment. Because McNairy was not officially licensed on the date he began performance, the trial court believed he could not recover under his contract. McNairy appeals the summary judgment in favor of Sugar Creek. We reverse and remand.
McNairy filed an application for a general contractor's license with the State Licensing Board for General Contractors on July 6, 1987. McNairy also filed with the Board a confidential financial statement *Page 186 
and an authorization allowing AmSouth Bank to release information to the board concerning his account and credit experience with the bank. It was the bank's responsibility to furnish the necessary information on McNairy. Inadvertently, AmSouth failed to furnish the information until June 20, 1988; on that date, when AmSouth furnished the information, McNairy became officially licensed.
Under the initial contract between McNairy and Sugar Creek, McNairy agreed to begin work on the property on a credit basis, up to a value of $50,000. McNairy agreed to clear areas for golfing ranges and to build a road through Sugar Creek's property.
On April 28, 1988, Carroll Wright, president of Sugar Creek, signed a statement accepting and approving McNairy's bill for work performed in the amount of $56,262.50. As security for the payment for work completed thus far, on May 15, 1988, Sugar Creek executed and delivered to McNairy a mortgage on the property for $75,000.
Wright signed another updated bill on June 10, 1988, in the amount of $97,361.75, for more work performed by McNairy. Ten days later, McNairy became an officially licensed general contractor.
Wright continued to sign statements of approval indicating the amount Sugar Creek owed McNairy for services performed. On July 5, 1988, McNairy was owed $116,452.25. The amount increased to $121,992.50 on July 11, 1988. Wright signed and approved a statement for $142,055.75 on August 5, 1988. One week later, on August 12, 1988, Wright acknowledged that the amount due to McNairy was $148,941.75.
On August 16, 1988, Sugar Creek paid McNairy $77,866.44 as a partial payment on his account and as satisfaction in full of the mortgage and as payment of the interest that had accrued on the debt secured by the mortgage. The statement signed on September 20, 1988, reflected that $75,000, the amount of the mortgage, had been paid to McNairy, but that there was still $87,790.25 due.
Wright signed a final statement on July 3, 1989, which showed that McNairy was due $194,014 plus interest at 15%. McNairy ceased work at Sugar Creek. On July 13, 1989, he filed a sworn statement of claim for the amount indicated on the final statement signed by Wright, plus interest. On July 27, 1989, McNairy filed his claim under the contract for his mechanic's lien in order to recover the amount due for services rendered.
Sugar Creek filed a Chapter 11 bankruptcy petition on August 3, 1989. In its petition, Sugar Creek listed McNairy as a creditor to whom it owed $193,000. On November 22, 1989, the bankruptcy court ordered that the automatic stay be lifted so that McNairy could proceed with his claim in the state court.
The trial court's order granting Sugar Creek's motion for summary judgment states that McNairy is unable to recover from Sugar Creek. Because McNairy had not been licensed to do business in Alabama at the time of the formation of the contract, the trial court held that he could not recover under the contract or enforce his mechanic's lien. The trial court erred.
McNairy does qualify as a general contractor under § 34-8-1, Code of Alabama (1975), which states in pertinent part:
 "For the purpose of this chapter, a 'general contractor' is defined to be one who, for a fixed price, commission, fee or wage, undertakes to construct or superintend the construction of any building . . . or any improvement or structure where the cost of the undertaking is $20,000 or more, and anyone who shall engage in the construction or superintending the construction of any structure or any undertaking or improvements above mentioned in the state of Alabama, costing $20,000 or more, shall be deemed and held to have engaged in the business of general contracting in the state of Alabama."
Section 34-8-2 requires McNairy to have a license from the State Contracting Board.
 "(a) Any person desiring to be licensed . . . as a general contractor in this state *Page 187 
shall make and file with the (state licensing) board, not less than 30 days prior to any regular or special meeting thereof, a written application on such form as may then be prescribed for examination by the board. . . ."
McNairy made an application to the Board on July 6, 1987, in order to obtain his general contractor's license. Although it was delayed, he obtained a valid license on June 20, 1988.
Even though the contract between McNairy and Sugar Creek preceeded the date of licensure, Sugar Creek repeatedly ratified and adopted the parties' initial contract. Wright's conduct after McNairy became licensed (specifically, accepting and approving the bills on July 5 and 11; August 5, 12, and 16; and September 20, 1988; and July 3, 1989) is substantial evidence of his ratification of their initial contract. These signed bills also evidence modifications to the original contract for $50,000. These modifications increased McNairy's duties and increased the amount due to $194,014 plus 15% interest.
Sugar Creek further recognized its obligation to McNairy in August 1988, when it made a partial payment of $77,866.44 for work that had been done by McNairy since he began on November 19, 1987. In fact, pursuant to Wright's instructions, McNairy did twice as much grading work after he was licensed as a general contractor than he had done before he obtained his license.
In Day v. Ray E. Friedman Co., 395 So.2d 54, 55 (Ala. 1981), the plaintiff, who was a commodities broker, entered into an employment contract with the defendant, an account executive. The contract specified that the defendant was to operate the plaintiff's Birmingham office. In Day, the trial court had written:
 "[T]he Court concludes that after Friedman [plaintiff] had qualified to do business in Alabama, Day [defendant] by his conduct recognized and adopted the employment agreement entered into by him with Friedman. It is then no defense to Friedman's claim under the note that Friedman had failed to qualify to do business in Alabama at the time the employment agreement was executed."
395 So.2d at 56. The ruling of the trial court in Day was affirmed by this Court on appeal.
In Day, the defendant sought to escape liability under its contract with the plaintiff on the ground that the plaintiff had not qualified to do business in Alabama at the time the contract was entered into. Ala. Code 1975, § 10-2A-247. That statute is not involved here, but the purpose of that statute is the same as the purpose of the statute relating to the licensing of general contractors. Those statutes are designed to penalize those who do business in Alabama without having qualified to do so, and, similarly, to penalize those who engage in the general contracting business without securing an Alabama license to do so.
In Day, this Court permitted recovery on the contract by a plaintiff who had qualified to do business in the state after he had entered into the contract with the defendant. This Court held that the purpose of the statute was not defeated by allowing the plaintiff to enforce the contract even though he had not been qualified to do business in Alabama at the time the contract was made.
The facts here are more compelling than those inDay. Here, McNairy agreed to do $50,000 worth of bulldozing work for Sugar Creek on credit. He applied for the license as a general contractor and deposited $200 in the form of a cashier's check, as required by the licensing board. He executed an authorization to his bank to release financial information to the board and then proceeded with the work. Unknown to him, through an oversight on the part of his bank, the financial information was not supplied to the board and the license was not issued until he had done some work.
McNairy continued to perform work for Sugar Creek, and its president, Carroll Wright, continued to acknowledge, both before and after the license was issued, that McNairy was entitled to receive payment for this work. We hold that the purpose of the statute is not defeated by allowing *Page 188 
McNairy to proceed to trial on his claim for monies due him for work and labor done under his agreement with Sugar Creek.
Decisions of the Eleventh Circuit Court of Appeals and the former Fifth Circuit support McNairy's argument that he is entitled to enforcement of his mechanic's lien because the contract was in fact ratified after licensure. See Aim LeasingCorp. v. Helicopter Medical Evacuation, Inc., 687 F.2d 354
(11th Cir. 1982); Montgomery Traction Co. v. Montgomery Light Water Power Co., 229 F. 672 (5th Cir.), cert. denied,242 U.S. 628, 37 S.Ct. 14, 61 L.Ed. 536 (1916).
The trial court erred in entering Sugar Creek's summary judgment. That judgment is, therefore, reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.