41 P.3d 651

**Richard CROWE, dba Richard Crowe Construction Company, Plaintiff–Appellant,**

v.

**HICKMAN'S EGG RANCH, INC., an Arizona corporation, Defendant–Appellee.**

No. 1 CA–CV 00–0410.

Court of Appeals of Arizona, Division 1, Department E.

March 12, 2002.

Review Denied June 25, 2002.

Law Offices of David Wm. West, P.C. by David Wm. West, Phoenix, for Plaintiff–Appellant.

DeConcini McDonald Yetwin & Lacy, P.C. by Philip R. Wooten, Phoenix, for Defendant–Appellee.

## OPINION

THOMPSON, J.

¶ 1 Appellant Richard Crowe (Crowe) appeals from the trial court's dismissal of his claims against Hickman's Egg Ranch, Inc. (Hickman's). At issue is whether Crowe substantially complied with Arizona Revised Statutes (A.R.S.) § 32–1153 (1996), thus allowing him to seek payment of $105,709.10 on a contract with Hickman's.

## I. BACKGROUND

¶ 2 Crowe is an experienced builder and licensed contractor in Mississippi who specializes in building commercial hen houses. Crowe took a contract with Hickman's to build hen houses and an egg processing plant in Arizona. It is undisputed that the contract was entered into before Crowe was licensed in Arizona. It is undisputed that Hickman's was aware that Crowe was unlicensed in Arizona at the time the contract was entered into. It is undisputed that Crowe took and passed the Arizona contractor's test in October 1997 but was not licensed or bonded until the following February. Crowe was not licensed when he began work on the project.[1]

¶ 3 Crowe filed a complaint seeking $105,709.10 payment for the work undertaken while he was a licensed and bonded Arizona contractor between February 1998 and February 1999. Crowe has not made a claim for any work outside of the licensure period. In the first amended complaint, Crowe asserted that "[d]uring the period at issue herein Plaintiff had an Arizona General Commercial Contractor's license (B–01, No. 131893)." The complaint made no other reference to Crowe's license.

¶ 4 Hickman's filed a motion to dismiss for lack of jurisdiction on the basis that Crowe was not a licensed Arizona contractor when the contract was entered into. Attached to Hickman's motion was a copy of the contract and an affidavit. In response, Crowe submitted an affidavit, documents from the Registrar of Contractors and invoices. Crowe urged that he had substantially complied with the licensing statute as permitted under *Aesthetic Property Maintenance, Inc. v. Capitol Indemnity Corp.*, 183 Ariz. 74, 900 P.2d 1210 (1995), and that he should be allowed to recover the contract losses he suffered while licensed and bonded in Arizona.

¶ 5 The trial court after motions and argument found that Crowe's failure to be licensed when the contract was entered into and when the cause of action arose was a complete bar to the action and that the *Aesthetic* substantial compliance doctrine did not create an exception under these facts. The court also found that it lacked subject matter jurisdiction as a matter of law. Crowe appealed. We have jurisdiction.

1. Crowe's work on the project, prior to licensure, included:

   June 5, 1997 Crowe was present for several days during which surveying was done and Crowe met with the surveyor.

   August 8, 1997 Crowe accompanied Hickman's to meet with various county officials regarding the project.

   August 8–9, 1997 Crowe met with various proposed earth-moving contractors regarding the scope of the project and their upcoming bids.

   August 19, 1997 Crowe and Hickman spoke on the telephone regarding which earthmoving contractor to hire.

   September 5, 1997 Crowe visited construction site to check compliance by subcontractor.

   February 17–22, 1998 Crowe re-surveyed property for hen house locations.

Section 32–1101(B) states that contractors are persons who represent:

themselves as having the ability to supervise or manage a construction project for the benefit of the property owners including, but not limited to, the hiring and firing of specialty contractors, the scheduling of work on the project and the selection and purchasing of construction materials.

Section 32–1101(A)(2) explicitly includes actions to "construct, alter, repair, add to, subtract from, move . . . or to do any part thereof, including the erection of scaffolding or any other structure or work" whether done directly himself or indirectly as a supervisor. We find Crowe's conduct clearly falls within the scope of contracting work contemplated by the legislature in A.R.S. § 32–1101(A)(2) and (B), and, indeed, constitutes a criminal offense. A.R.S. § 32–1164(A)(2).

## II. STANDARD OF REVIEW

¶ 6 Plaintiff bears the burden of establishing jurisdiction. *Switchtenberg v. Brimer,* 171 Ariz. 77, 82, 828 P.2d 1218, 1223 (App.Ct.1991). The trial court is free to consider extrinsic evidence and resolve factual issues related to jurisdiction. *Id.* We review the record "in a light most favorable to sustaining the trial court's ruling." *Id.* Legal arguments are reviewed *de novo. Id.*

## III. DISCUSSION

### A. Section 32–1153

¶ 7 Section 32–1153 sets forth the prerequisites to bring an action for unpaid work:

No contractor ... shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that the contracting party whose contract gives rise to the claim *was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.*

A.R.S. § 32–1153(1996) (emphasis added). The legislature enacted A.R.S. § 32–1153 "to protect the public from unscrupulous, unqualified, and financially irresponsible contractors." *Aesthetic,* 183 Ariz. at 77, 900 P.2d at 1213 (citation omitted). Section 32–1153 explicitly conditions a claim for unpaid work on licensure "when the contract sued upon was entered into and when the alleged cause of action arose." Crowe was not licensed when the contract was entered into.[2] And Crowe was not licensed when work began on the project.

¶ 8 For many years Arizona required strict compliance with the contractor licensing statutes. *See, e.g., Northen v. Elledge,* 72 Ariz. 166, 232 P.2d 111 (1951) (denying recovery for more than eight months work done while the contractor's license lapsed). In 1995, however, the Arizona Supreme Court found that substantial compliance with the contractor licensing statute was sufficient to satisfy the licensing prerequisite in A.R.S. § 32– 1153. *Aesthetic,* 183 Ariz. at 78, 900 P.2d at 1214. Because this expansion necessitates a factual inquiry, we proceed to analyze whether Crowe substantially complied with A.R.S. § 32–1153 and whether summary judgment was appropriate.

### B. *Aesthetic* and the Substantial Compliance Test

¶ 9 In *Aesthetic,* a contractor's license was automatically suspended when the contractor failed to renew. 183 Ariz. at 75, 900 P.2d at 1211. The evidence showed that the Registrar of Contractors had erroneously sent the renewal notice to the contractor's old address. *Id.* The contractor renewed immediately once he became aware of the problem. *Id.* The supreme court reversed summary judgment against the contractor and held that the contractor could sue for payment on one job completed and one job begun while his license had inadvertently lapsed through no fault of his own. *Id.,* 183 Ariz. at 75, 78, 900 P.2d at 1211, 1214. The court allowed that "substantial compliance is adequate when it satisfies the general policy or purpose of the statute" and it set out factors to determine substantial compliance. *Id.,* 183 Ariz. at 78, 900 P.2d at 1214.

¶ 10 Applying the factors enumerated in *Aesthetic* to Crowe, we examine whether:

(1) the Registrar of Contractors contributed to Crowe's noncompliance;

(2) Crowe was financially responsible while he was unlicensed;

(3) Crowe knowingly ignored the registration requirements;

(4) Crowe immediately, upon learning of the statutory noncompliance, acted to remedy it, and

(5) the failure to comply with the licensing statute prejudiced Hickman's.

*See id. Aesthetic* instructs that either a failure to be financially responsible or to knowingly ignore the registration requirements is fatal. *Id.* The contractor bears the

---

2. This is so whether the contract was effective in October or December, 1997; Crowe was not licensed in Arizona until February, 1998. Achieving a passing score on the contractor's exam is but one factor in achieving licensure. *See* A.R.S. § 32–1122 (1996). We need not further address whether Crowe was licensed when the claim arose.

burden of proof to demonstrate substantial compliance. *See id.*

¶ 11 In applying the *Aesthetic* factors to Crowe, we need not go far before his claim of substantial compliance is obviated. Under the first factor, there is no assertion that acts by the Registrar contributed to Crowe's lack of licensing so we proceed on.

¶ 12 For the second factor, *Aesthetic* requires that the contractor demonstrate financial responsibility by maintaining his liability insurance, surety bond, and workman's compensation during the unlicensed period; "[f]ailing that, there can be no substantial compliance." *Id.*, 183 Ariz. at 78, 900 P.2d at 1214. Crowe presented no evidence that he was financially responsible during the pertinent unlicensed period prior to February 1998. Instead, Crowe seems to argue that he was financially responsible during the time for which he seeks damages. Crowe asserts that had he not been financially responsible, as required by A.R.S. § 32–1122, the Arizona Registrar of Contractors would not have licensed him.

¶ 13 *Aesthetic* is clear that the court is to examine whether the contractor acted responsibly during the time when he was *unlicensed. See id.* Of this factor, the court said:

> Because the statute is designed to protect the public, the public must in fact be protected while the license is suspended. Was the contractor financially responsible while its license was suspended?

*Id.* The application of this factor requires demonstrable financial responsibility while the license was not in effect. *See id.* Crowe did not meet his burden of proof as to financial responsibility, and this alone eliminates his claim of substantial compliance. We need not proceed to the next two factors, although we note that Crowe also does not dispute that he was aware of Arizona's licensing requirements and that he did not immediately attempt to comply with the licensing statute. Failure to act diligently in this regard is, likewise, fatal. *Aesthetic,* 183 Ariz. at 78, 900 P.2d at 1214.

¶ 14 We agree with Hickman's that the basic premise of the substantial compliance test as outlined in *Aesthetic* is that the contractor was unlicensed through no fault of his own and immediately acted to rectify the prob-

lem. Such is not the case here and the trial court correctly determined that the substantial compliance doctrine did not save Crowe.

### C. Crowe's Contract Ratification Theory

¶ 15 Crowe asserts that "[g]iven Hickman's admitted conduct, e.g., knowingly contracting with, requesting services from and paying Crowe while he was unlicensed, it would not be equitable" to allow Hickman's to escape payment. Crowe urges us to find that because Hickman's acted with full awareness that he was unlicensed, Hickman's should be found to have ratified this behavior. To this end, Crowe cites *McNairy v. Sugar Creek Resort, Inc.,* 576 So.2d 185 (Ala. 1991).

¶ 16 Hickman's asserts that Crowe has waived this argument by failing to raise it below. We agree. Arizona Rule of Civil Appellate Procedure 13(b)(3) requires that issues be "properly presented below." Issues not properly raised below are waived. *R.E. Monks Constr. Co. v. Aetna Cas. & Sur. Co.,* 189 Ariz. 575, 578, 944 P.2d 517, 520 (App.Ct.1997). Our review of the record reveals that Crowe never raised this "ratification" theory prior to his appeal; rather, Crowe argued and submitted documents that asserted that Hickman's knew he was unlicensed, advised him to become licensed and advised him regarding the applicability of sales tax. Crowe mentioned the *McNairy* case in various documents but each time it was in support of a theory of substantial compliance. Crowe did not adequately raise the ratification theory below and, thus, it is waived on appeal.

¶ 17 Even if the ratification theory had been timely raised, we would not be prepared to create a judicial exception for ratification. The *McNairy* court, in adopting the ratification theory, was not interpreting a statute like ours; A.R.S. § 32–1153 specifically prohibits suits unless the contractor was licensed "when the contract sued upon was entered into." Alabama did not have such a statute; rather its common law made that prohibition based on their contractor licensing scheme. *See Herbert v. Birmingham–Jefferson Civic Cent. Auth.,* 694 F.2d 240

(11th Cir.1982) (citing *Hawkins v. League*, 398 So.2d 232 (Ala.1981)). Arizona's Legislature, on the other hand, recently moved to strengthen the contractor statutes to prohibit even bidding or responding to a request for proposal without a license. *See* A.R.S. § 32–1151 (2000). Under this paradigm, we could not create a judicial exception to the explicit language laid out by our legislature.

¶ 18 It is not unusual for a contractor like Crowe, caught between being unpaid and unlicensed, to complain about equity. *See, e.g., Northen,* 72 Ariz. at 173, 232 P.2d at 116 (citations omitted). However, like the *Northen* court, we decline to act in equity even to prevent a substantial loss to the complainant because:

> the statute requiring a contractor to possess a contractor's license before he may recover for work done was designed for the protection of the public and must not be defeated in order to accommodate one who has violated the provisions of the statute. Permitting an unlicensed contractor to recover on the ground that a loss would result to him otherwise would completely nullify the statute since every unlicensed contractor would sustain a loss or forfeiture unless he were allowed recovery. The remedy, if any, lies with the legislature.

*Id.* We have before us a statutory scheme as laid out by our legislature and a single Arizona Supreme Court case in *Aesthetic* laying out the elements for substantial compliance. Given these parameters we are not at liberty to adopt the reasoning set forth in the dissent. For the above stated reasons, we decline to adopt the ratification exception urged by Crowe.

## IV. FEES

¶ 19 On appeal, both Hickman's and Crowe request fees and costs. Crowe's request is denied. Hickman's request for fees pursuant to A.R.S. § 12–341.01 is denied. Hickman's request for costs is granted.

## CONCLUSION

¶ 20 For the above stated reasons, we affirm.

CONCURRING: SCOTT, Presiding Judge.

VOSS, Judge, dissenting.

¶ 21 To the extent that Hickman's motion to dismiss was treated as a motion for summary judgment, the following facts are either supported by the record or conceded by the majority.

¶ 22 Crowe has been a licensed contractor in Mississippi continuously since 1974. Crowe specialized in the construction of commercial hen houses and has been involved in this type of construction in several states. Hickman has been in the egg business in Arizona for decades and specifically sought out Crowe to construct new hen houses ("the project").

¶ 23 The parties traveled back and forth between Arizona and Mississippi several times to discuss the project and an agreement was reached ultimately. The $2,310,000 construction contract, accepted October 28, 1997, was subject to "final financing," the approval of which was obtained in December of 1997.

¶ 24 Hickman knew Crowe did not have a contractor's license when they entered into the contract and advised Crowe to obtain one. Hickman even forwarded licensing information to Crowe for his use. Crowe applied for the contractor's license. Crowe passed the written portion of the licensing exam on October 1, 1997. Crowe was fully licensed as a general commercial contractor and bonded on February 23, 1998. Hickman made many progress payments over the course of construction—and only ceased making payments called for under the contract when a dispute over the quality of the construction arose. The damages Crowe seeks to recover through this litigation represent less than 4 percent of the original contract amount and only involves work accomplished after Crowe was fully licensed and bonded.

¶ 25 The supreme court in *Aesthetic Property Maintenance Inc. v. Capitol Indemnity Corp.*, 183 Ariz. 74, 900 P.2d 1210 (1995), recognized the manifest injustice that could occur through a strict application of the requirements of A.R.S. section 32–1153 and established a substantial compliance standard to be utilized when considering whether the

requirements of A.R.S. section 32–1153 have been satisfied.

¶ 26 The majority and I disagree on what was important to the *Aesthetic* court. The majority applies the elements suggested by the court strictly while I look at the "policy and purpose" of the statute—what I believe is the driving force behind *Aesthetic.* The language of *Aesthetic* supports my position.

> In short, whether substantial or strict compliance is required is largely a question of which test best promotes legislative *purpose. See* A.R.S. § 1–211(B) ("Statutes shall be liberally construed to effect their objects and to promote justice.")

*Id.* at 77, 900 P.2d at 1213 (emphasis added).

> Substantial compliance "is adequate when it satisfies the general policy or purpose of the statute."

*Id.* at 78, 900 P.2d at 1214.

¶ 27 The "policy or purpose" of A.R.S. section 32–1153 "is to protect the public from unscrupulous, unqualified, and financially irresponsible contractors." *Id.* The public did not need protection from Crowe for any of the above. Indeed, the word unscrupulous only comes to mind when one considers Hickman's involvement in this matter. Again, Hickman sought out Crowe, entered into a contract with him, although he knew he was not licensed, sent Crowe materials to help him obtain a license, let Crowe on the property to do the work, paid him millions of dollars on the contract, accepted the project, and, if you believe Crowe's allegation, then refused to pay over $105,000 for work done. The first, and only time Crowe heard about his lack of a license "at the time he entered the contract" is when Hickman filed his answer and motion to dismiss.

¶ 28 The court in *Aesthetic* cited with approval the disposition of the court in *Koehler v. Donnelly,* 114 N.M. 363, 838 P.2d 980 (1992). There, like the court in *Aesthetic,* the court suggested certain elements that could be used in evaluating whether the requirements of substantial compliance were met. After listing the elements, however, the *Koehler*

court recognized that each factor need not be present and that *"the true test is whether the contractor's substantial compliance with the licensing requirements satisfies the policy of the statute." Id.* at 982 (emphasis added).

¶ 29 The majority, citing *Aesthetic,* claims that "Crowe did not meet his burden of proof as to financial responsibility, and this alone eliminates his claim of substantial compliance." Respectfully, the majority has read the holding of *Aesthetic* too narrowly. *Aesthetic* was decided in the context of the inadvertent suspension of a contractor's license when its renewal notice was sent to the wrong address. The *Aesthetic* court found that, under those circumstances and in order to protect the public, substantial compliance required that the contractor remain financially responsible during the period of time its license was suspended. 183 Ariz. at 78, 900 P.2d at 1214. The court did not, however, limit the doctrine of substantial compliance to those circumstances only but extended it to other situations in which the "general policy or purpose of the statute" is satisfied. *Id.*

¶ 30 Here, the policy or purpose of section 32–1153 was satisfied and the public was protected because Crowe seeks payment only for the time he was licensed and bonded.[3] Crowe has been a contractor since 1974 constructing specialized buildings. Hickman sought out Crowe because of this expertise. Hickman knew that Crowe did not have a license when he entered into the contract. Hickman paid out over $2,000,000 on the project over the course of a year and only complained about the lack of a license at the time the contract was entered into some two years previously, when Crowe sued for money he alleged was due.

¶ 31 It is clear to me from the language in *Aesthetic* and the cases cited therein that A.R.S. section 32–1153 is to be used as a shield, not a sword. I respectfully submit that the majority is wrongfully allowing the statute to be used as a sword to punish

---

**3.** The majority's footnote 1 is irrelevant. The duties cited end on February 22, 1998. Crowe's Arizona contractor's license and bond were issued effective February 23, 1998 and February 2, 1998 respectively. Crowe's complaint sought damages for labor performed and materials supplied after February 23, 1998. Crowe seeks no relief whatsoever for the work performed during the period set forth in footnote 1.

Crowe for acting in a fashion invited by Hickman.

¶ 32 I would follow the lead of *Aesthetic* and find that Crowe's actions satisfy the requirements of substantial compliance. I, like the court in *Aesthetic,* would reverse and remand with instructions to the trial court to enter judgment for Crowe and against Hickman. This would allow the matter to proceed to trial on the construction claim.