975 A.2d 271

**BALTIMORE STREET BUILDERS**

v.

**Thomas G. STEWART.**

**No. 0828, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

July 7, 2009.

Fred M. Lauer, (on brief), Baltimore, for appellant.

Donna M.B. King, (on brief), Towson, for appellee.

Panel: SALMON, GRAEFF, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

SALMON, J.

Baltimore Street Builders, LLC filed a petition to establish and enforce a mechanic's lien in the Circuit Court for Baltimore City. The petition was accompanied by a proposed show cause order and named Thomas G. Stewart ("Stewart") as the defendant.

The petition alleged that Baltimore Street Builders, LLC (hereinafter "BSB") entered into a contract with Stewart to construct an addition to an existing building that Stewart owned. The work contracted for was intended for residential use. According to the petition, during the course of the construction work, BSB was directed by Stewart to furnish and install additional labor and materials, which resulted in the issuance of change orders that increased the contract price to a projected total cost of $363,780.07. Stewart paid BSB $183,418.60 but failed to pay the $180,361.47 balance.

Attached to the petition was the contract signed on February 25, 2006, by Stewart and by one Robert Lenkey, on behalf of BSB.

A show cause order was issued by the circuit court on March 12, 2008. It required Stewart to show cause "by filing a counter-affidavit or verified answer on or before the 23rd day of April, 2008, why a lien for the amount claimed should not attach upon the land described in the petition." The petition and the show cause order were served upon Stewart on April 3, 2008.

Stewart, *pro se*, attempted to file an answer to the petition and show cause order on April 23, 2008. His attempt, however, was rebuffed by the clerk of the circuit court because his answer was not accompanied by a certificate of service.

On April 29, 2008, BSB filed a motion asking the court to issue an interlocutory order granting BSB a mechanic's lien, based upon the fact that Stewart had not filed a response to the petition. On May 4, 2008, Stewart, by counsel, filed an answer to the petition, supported by an affidavit. Stewart also filed on the same date a motion for additional time to file an answer to the petition to establish and enforce the mechanic's lien and a motion to dismiss or, in the alternative, a motion for summary judgment. This last mentioned pleading was supported by a memorandum of law.

Four days after Stewart's pleadings were filed, on May 8, 2008, a hearing was held in the circuit court concerning the petition to enforce the mechanic's lien. At the conclusion of the hearing, the judge delivered an oral opinion in which she ruled that because BSB had no home improvement license it had no right to enforce the contract or to establish a lien based upon that contract. A written order was promptly signed dismissing the petition. BSB then filed this appeal in which it raises three questions, which we have reordered:

1. Did the Circuit Court err by finding as a matter of fact and law that [a]ppellant was not a licensed contractor, as required by the Maryland Home Improvement Commission?

2. Did the Circuit court err by not giving [a]ppellant 30 days to request a trial on [a]ppellant's Petition to Establish and Enforce Mechanic's Lien?

3.  Did the Circuit court err in denying [a]ppellant's motion for an interlocutory Order?

## I.

In the affidavit filed on May 4, 2008, Stewart swore that the following facts were true: 1) that prior to signing a home improvement contract with BSB he dealt with Robert Lenkey; 2) Lenkey told Stewart that he owned Harbour House Builders, LLC [Harbour House] and that Harbour House would be the entity that would enter into a contract with him; 3) on the day the contract was signed, Lenkey told Stewart that another company he owned, BSB, would perform the home improvement work on Stewart's property; 4) after the contract was signed, Stewart learned that BSB did not come into existence until March 9, 2007, which was, according to Stewart's affidavit, "near the expiration of Robert and Barbara Lenkeys' work on my property."; 5) work on Stewart's property began in "Mid–January 2006" and was completed in "June 2007," 6) the work performed on his property by Lenkey and/or BSB was deficient in numerous respects; 7) after the contract was executed, at some unspecified time, Stewart learned that "Robert Lenkey, Barbara Lenkey and BSB [were] not licensed as home improvement contractors [with] the Maryland Home Improvement Commission."

Attached to Stewart's affidavits were various exhibits that demonstrated, *inter alia,* that neither the Lenkeys or BSB have ever had a home improvement license; the exhibits also showed that, according to the records of the Maryland State Department of Assessment and Taxation, BSB did not come into existence until March 9, 2007, which was a little over a year after BSB's contract with Stewart was signed.

## II.

### The May 8, 2008 Hearing

At the beginning of the hearing, counsel for BSB pointed out that there was a "legal issue" that was presented for the

first time in Stewart's motion to dismiss and/or motion for summary judgment. BSB's counsel said that he and counsel for Stewart, because of this new issue, were "requesting the court ... to postpone the interlocutory hearing, so that we could resolve [the legal issues] through a hearing on the summary judgment motion or [the] motion to dismiss." The court inquired of counsel for BSB whether he wanted a five minute recess to talk to opposing counsel while the court considered another matter. To this, BSB's counsel said (ambiguously) "fine—the time for me to respond to the motion hasn't passed yet." The court next advised counsel that it was going to decide the motion to dismiss and/or motion for summary judgment first, and that it was necessary for her to do so in order to decide whether or not to grant BSB's petition to establish a mechanic's lien. Counsel for BSB did not object; instead, he said that he understood the court's position, and after some further colloquy, a short recess was called while the court directed its attention to another case.

After the just mentioned interlude, counsel for BSB admitted to the court that his client had never had a home improvement license. BSB's counsel proffered, however, that James Kunkel,[1] a 50% owner of BSB, held "a home improvement license through a company called Stonehenge International [,] Incorporated...." According to counsel's proffer, Stonehenge International, Inc. ("Stonehenge") did work on Stewart's home inasmuch as Mr. Kunkel, as a representative of Stonehenge, "acted as the construction management company on the project." Counsel for BSB also proffered that his clients (at some unspecified time) contacted the Home Improvement Commission and based on that contact "were led to believe that they were operating properly, because one of the principals in their company held a home improvement license."

Counsel for BSB further proffered that: 1) BSB had a federal tax identification number that was issued to it in 2005; 2) BSB filed an income tax return in 2006, and 3) Mr. Kunkel

---

1. In the transcript Mr. Kunkel's last name is misspelled as "Conkel." All parties agree that the correct spelling of his last name is "Kunkel."

was listed on the tax returns as a 50% member[2] of BSB, a "Limited Liability Company." BSB also introduced into evidence a complaint against BSB, which was filed by Stewart with the Home Improvement Commission. According to BSB's counsel, the complaint with the Home Improvement Commission was significant because Stewart said in that complaint that before the project commenced, Robert Lenkey introduced Stewart "to his [Mr. Lenkey's] partner Jimmy Kunkel (who has a business that operates in Maryland under the name of 'Stonehenge International')".

## III.

BSB makes several arguments in its opening brief in support of its claim that the circuit court erred in granting summary judgment against it. First, it claims that "the circuit court erred as a matter of law when it found that appellant was not a license[d] contractor when performing the contract with appellee." Under the argument just mentioned, BSB, citing *Antigua Condominium Asso. v. Melba Investors Atlantic, Inc.,* 307 Md. 700, 719, 517 A.2d 75 (1986) and *Worsham v. Ehrlich,* 181 Md.App. 711, 722, 957 A.2d 161 (2008), makes the following statement:

> the trial court here treated the motion as one for summary judgment by allowing matters outside the pleading into evidence [on] the day of the hearing on Appellant's Show Cause Order. Since the trial court treated the motion as one for summary judgment, it must provide the parties with

---

2. The United States Internal Revenue Service web site defines a Limited Liability Company as follows:

A Limited Liability Company (LLC) is a relatively new business structure allowed by state statute.

LLCs are popular because, similar to a corporation, owners have limited personal liability for the debts and actions of the LLC. Other features of LLCs are more like a partnership, providing management flexibility and the benefit of pass-through taxation.

Owners of an LLC are called members. Since most states do not restrict ownership, members may include individuals, corporations, other LLCs and foreign entities. There is no maximum number of members. Most states also permit "single member" LLCs, those having only one owner....

a reasonable opportunity to present, in a form suitable for consideration on summary judgment, additional pertinent material.

The rule BSB cites is well established and the reason for it "is because a non-moving party may be prejudiced if a trial court treats a motion to dismiss as a motion for summary judgment by considering matters outside the pleadings, but does not give the non-moving party a reasonable opportunity to present material that may be pertinent to the court's decision as required by Maryland Rule 2–501." *Worsham,* 181 Md.App. at 722–23, 957 A.2d 161.

We agree with BSB that the circuit court did treat the motion as one for summary judgment. After all, the facts as set forth in the complaint indisputably stated a cause of action upon which relief could be granted. It was only by looking outside the pleading, more specifically by looking at the affidavit signed by Stewart, that the court had a basis to rule that BSB could not enforce the contract because it had no home improvement license.

BSB maintains that the court erred in failing to give it a reasonable amount of time to respond to the summary judgment motion. Stewart answers by pointing out (correctly) that BSB failed to state in its opening brief what else it would have presented to the circuit court if it had been granted more time.

The failure to point out what would have been done if more time had been available is important because in order to prevail in a civil case, an appellant must show not only error but must show as well that it was prejudiced by that error. *See Flores v. Bell,* 398 Md. 27, 33, 919 A.2d 716 (2007). In its reply brief, BSB sets forth what it would present if we were to remand this case:

1. Evidence of licensure by the Maryland Home Improvement by Mr. Kunkel and Stonehenge International.[3]

---

3. At oral argument before us, BSB's counsel clarified that it was Stonehenge International that had a home improvement license; Mr. Kunkel owns Stonehenge International.

2. Evidence of the partnership agreement and responsibilities between Robert and Barbara Lenkey, James Kunkel and Stonehenge International regarding Baltimore Street Builders.

3. Evidence of Mr. Kunkel's supervision of the work done on Appellee's property.

4. Evidence of the application by Stonehenge International for various construction permits from the City of Baltimore.

5. Evidence of tax filing by Baltimore Street Builders, listing James Kunkel as a partner.

6. An analysis of Maryland Code Business Regulations Section 8–301(d)(1), which may not require Baltimore Street Builders to have a home improvement contractor's license.

7. An analysis of the regulations of the Maryland Home Improvement Commission regulations, particularly 09.08.01.04(B), which may also not require Baltimore Street Builders to hold such license.

8. Testimony by Barbara Lenkey regarding her discussions with and understanding of the policy of the Maryland Home Improvement Commission concerning licensure.[4]

9. Evidence of findings in the District Court of Maryland for Baltimore City in case numbers 4B0178330 and 2B01861125 whereby Robert and Barbara Lenkey were found not guilty of allegations by the Maryland Home Improvement Commission that they acted as a home improvement contractor without a license.

---

4. In its brief, appellant clarifies that an agent of BSB spoke "with members of the staff" of the Commission. Depending on who the agent talked to and what was said, BSB may have believed in good faith that it did not need a license, but good faith failure to obtain a license, standing alone, certainly does not establish substantial compliance with the licensing requirements of the Maryland Home Improvement Law.

10.  A case analysis of Maryland law demonstrating how the courts have viewed "substantial compliance" with regulatory statutes.

We will assume, *arguendo*, that all the proffers made by BSB's counsel to the motions judge are true and that if given the chance BSB would have presented additional facts to the circuit court in accordance with representations made by it in its reply brief.  But even with those assumptions, we shall hold that appellant has failed to show that it was prejudiced by the court's failure to give it additional time to answer the summary judgment motion.

The Maryland Home Improvement Law is set forth in Maryland Code (1992, 1998 Repl.Vol., 2002 Supp.), section 8–101 to 8–702 of the Business Regulation Article.[5]

Section 8–301 reads as follows:

**§ 8–301.  License required;  exceptions.**

(a) *Contractor license.*—Except as otherwise provided in this title, a person must have a contractor license whenever the person acts as a contractor in the State.

(b) *Subcontractor license.*—Except as otherwise provided in this title

(c) *Salesperson license.*—Except as otherwise provided in this title, a person must have a salesperson license or contractor license whenever the person sells a home improvement in the State.

(d) *Exceptions.*—This section does not apply to:

(1) an individual who works for a contractor or subcontractor for a salary or wages but who is not a salesperson for the contractor;

(2) a clerical employee, retail clerk, or other employee of a licensed contractor who is not a salesperson, as to a transaction on the premises of the license contractor;

---

5.  Hereinafter, all statutory references are to the Business Regulation Article.

(3) a solicitor for a contractor who calls an owner by telephone only;

(4) an architect, electrician, plumber, heating, ventilation, airconditioning, or refrigeration contractor, or other person who:

(i) is required by State or local law to meet standards of competency or experience before engaging in an occupation or profession;

(ii) currently is licensed in that occupation or profession under State or local law; and

(iii) is:

1. acting only within the scope of that occupation or profession; or

2. installing a central heating or air-conditioning system;

(5) a security systems technician licensed under Title 18 of the Business Occupations and Professions Article; or

(6) a person who is selling a home improvement to be performed by a person described in item (4) of this subsection. (Ann.Code 1957, art. 56, §§ 247, 255, 256; 1992, ch. 4, § 2; ch. 649; 1994, ch. 3, § 13; ch. 362; 1999, ch. 483.)

(Emphasis added.)

Section 1–101(g) of the Business Regulation Article defines "person" as "an individual, receiver, trustee, guardian, personal representative, fiduciary, representative of any kind, partnership, firm, association, corporation, or other entity."

BSB did not exist at the time the contract for home improvements was signed. It was, according to appellant's proffer, a partnership. BSB did exist, however, at the time of the hearing on this matter. Because Robert Lenkey signed the contract for BSB, he would have been liable to Stewart if the contract was breached and Stewart had sued for damages. *Curtis G. Testerman Co., v. Buck,* 340 Md. 569, 576, 667 A.2d 649 (1995). Inasmuch as neither Robert Lenkey or BSB of

the informal partnership known as BSB ever had a home improvement contractor's license, it cannot be said that the "person" with whom appellee contracted complied with section 8–301(a).

In *S.A.S. Personnel Consultants Inc. v. Pat–Pan, Inc.*, 286 Md. 335, 341, 407 A.2d 1139 (1979), the Court said:

This Court assumes, if the Legislature does not indicate otherwise, that contracts made by unlicensed persons subject to regulatory statutes designed to protect the public are illegal as against public policy and will not be enforced. *Harry Berenter, Inc. v. Berman*, 258 Md. 290, 298–99, 265 A.2d 759, 764 (1970); *Goldsmith & Dell v. Manufacturers' Liability Ins. Co.*, 132 Md. 283, 286, 103 A. 627, 628 (1918).

The Maryland Home Improvement Law "is a regulatory statute enacted for the protection of the public." *Brzowski v. Maryland Home Improvement Commission*, 114 Md.App. 615, 628, 691 A.2d 699 (1997) (citing *Harry Berenter, Inc. v. Berman*, 258 Md. 290, 294, 265 A.2d 759 (1970)). In *Brzowski*, we stated:

The act also established the Home Improvement Guaranty Fund. *Id.*, § 8–401 *et seq.* The Fund was created to provide an additional remedy for homeowners who suffered actual loss due to unsatisfactory work performed by a home improvement contractor. Md. Ann.Code art. 56, § 257A(a) (Supp.1985) (recodified at Md.Code Ann., Bus. reg., §§ 8–403(a),–405(a)); Senate Economic and Environmental Affairs Committee, Bill Analysis for Senate Bill 507 at 2 (1985). The statutory provisions governing the administration of the Fund, however, limit payments from the Fund to only those claims that establish that a homeowner has suffered "actual loss" due to the act or omission of a licensed contractor. Md.Code Ann., Bus. Reg. § 8–405(a). We shall explain further.

A claim for reimbursement from the Fund requires the submission of a claim to the Commission, with "the amount claimed based on the *actual loss.*" *Id.*, § 8–406(1) (emphasis added). Upon receipt of a claim, the Commission must

transmit a copy of the claim to the contractor "alleged to be responsible for the *actual loss.*" *Id.*, § 8–407(b)(*l* ) (emphasis added).

\* \* \*

When the Commission orders payment from the Fund, serious repercussions can be visited upon the contractor responsible for the actual loss that the Fund payment sought to compensate. For instance, if the Commission pays any amount from the Fund on account of a contractor's conduct, the Commission may suspend the contractor's license if he fails to reimburse the Fund in full. Md.Code Ann., Bus. Reg. § 8–411. Naturally, loss of license can have dire consequences for a contractor. A person may not act as contractor in this state without a contractor's license. *Id.*, § 8–601(a). Indeed, "a licensed person will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy." *Harry Berenter,* 258 Md. at 293, 265 A.2d at 761. *See Donmar Md. Corp. v. Hawkesworth,* 46 Md.App. 575, 576, 420 A.2d 295 (1980). Furthermore, if the Commission pays a claim against the Fund, the rights of the claimant against the contractor are subrogated to the Commission to the extent of the amount paid to the claimant from the Fund. Md.Code Ann., Bus. Reg. § 8–410(a)(*l* ). The Commission, therefore, may sue any contractor on whose account a claim was paid, if the contractor does not reimburse the Fund in full, including interest. *Id.*, § 8–410(b).

114 Md.App. at 628–30, 691 A.2d 699 (emphasis added).

Stewart contends that the case *subjudice* is controlled by *Harry Berenter, supra.* In the *Berenter* case, Harry Berenter, Inc. attempted to enforce a mechanic's lien in the Circuit Court for Montgomery County against the property of Phillip G. and Toby Berman. 258 Md. at 291, 265 A.2d 759. In that case, as in the one *sub judice,* the contractor who performed the home improvement work was not licensed under the Maryland Home Improvement Law. *Id.* In the *Harry Beren-*

*ter* case, the Court of Appeals, relying upon *Goldsmith v. Manufacturers' Liability Ins. Co.,* 132 Md. 283, 103 A. 627 (1918), and later Maryland cases, held that the Maryland Home Improvement Law is a regulatory statute enacted for the protection of the public and not merely a revenue measure. 258 Md. at 294, 265 A.2d 759. The Court of Appeals then said:

> Berenter, Inc. earnestly contends that because the enforcement of a mechanic's lien is involved in an equity court, the rule against the enforcement of contracts by unlicensed persons under regulatory laws should not apply. In our opinion, even though the mechanic's lien is created by statute, nevertheless such a lien is provided for the *enforcement of a contract* for work done and materials furnished, Code (1957), Art. 63, §§ 1, 19. The same public policy is involved in regard to this remedy as is present in regard to other remedies to enforce contracts. It is also clear that courts of equity will not lend their aid to enforce an illegal contract, 3 Pomeroy, *Equity Jurisprudence* (5th Ed.), § 940, p. 728.

> The appellant Berenter, Inc., also argues that unless the mechanic's lien is enforced, the Bermans will be "unjustly enriched to no small extent." However, as we said in *Thorpe v. Carte,* [252 Md. 523, 250 A.2d 618 (1969) ] *supra,* quoting from 2 Restatement, *Contracts,* § 598, comment a:

>> The court's refusal is not for the sake of the defendant, but because it will not aid such a plaintiff.

> Nor is the contention that there is unjust enrichment of the defendants tenable. To permit a recovery on a *quantum meruit* would defeat and nullify the statute. *Northen v. Elledge,* 72 Ariz. 166, 232 P.2d 111 (1951); *Lewis & Queen v. N.M. Ball Sons,* 48 Cal.2d 141, 308 P.2d 713 (1957).

*Berenter,* 258 Md. at 296, 265 A.2d 759.

In its reply brief, BSB relies on section 09.08.01.04(B) of the Maryland Code of Regulations ("COMAR"), in support of its position that no license was needed. Section 09.08.01.04 reads:

.04 Corporate or Partnership Licensure.

A. A corporation or partnership may not act as a home improvement contractor unless it obtains a corporate or partnership home improvement contractor's license.

B. In order to obtain and maintain a corporate or partnership home improvement license, the corporation or partnership shall employ one individual licensed contractor who shall be in responsible charge of the corporation's or partnership's home improvement work.

C. The corporation or partnership and the individual in responsible charge of the corporation's or partnership's home improvement work shall be jointly and severally responsible for:

(1) Payment of any fees required by Business Regulation Article, §§ 8–302, 8–303, 8–308, and 8–404, Annotated Code of Maryland;

(2) Filing of a bond or other evidence of financial responsibility required by Business Regulation Article. § 8–303(c), Annotated Code of Maryland;

(3) Repayment to the Home Improvement Commission Guaranty Fund pursuant to Business Regulation Article. § 8–410, Annotated Code of Maryland, for any payments made to claimants from the Fund on account of violations by the corporation or partnership or the individual in responsible charge.

D. For purposes of applying the $100,000 limitation in Business Regulation Article. § 8–405(e)(2), Annotated Code of Maryland, on Guaranty Fund awards on account of the conduct of any one licensed contractor, the combined liability of a licensed corporation or partnership and the individual in responsible charge of the corporation's or partnership's work may not exceed $100,000 in the aggregate.

E. The Commissions may, pursuant to Business Regulation Article. § 8–311, Annotated Code of Maryland, sanction a corporation or partnership for conduct which

> is in violation of Business Regulation Article, Title 8, Annotated Code of Maryland.

(Emphasis added.)

We fail to see how any words used in COMAR 09.08.01.04(B) help BSB to support its claim that it did not need a license. After all, COMAR 09.08.01.04(A) says in plain English that no corporation or partnership can act as a home improvement contractor unless it obtains a home improvement or contractor's license. And, based on appellant's proffer, BSB was an informal partnership prior to becoming a limited liability company.

■  BSB next argues that the contract should be enforced because BSB substantially complied with the statute. It phrases its argument as follows:

> Appellant presented evidence by proffer, affidavit and one exhibit that Baltimore Street Builders did comply or at least substantially comply with the statutory requirements. If remanded, Appellant will argue that there was substantial compliance, since one of its members of the limited liability company, who did have the home improvement commission license, not only had a license but oversaw the work in Appellee's home.

Because BSB's counsel admitted at oral argument before us that it was Mr. Kunkel's company, Stonehenge International, that had the license, we interpret the appellant's argument to be that BSB substantially complied with the statute because at the time the contract with Stewart was signed, BSB was a partnership and Mr. Kunkel was one of BSB's partners, and an entity controlled by Mr. Kunkel had a license. Such an attenuated relationship with a license holder can scarcely be considered "substantial compliance" in light of the require-ment that the partnership [BSB] that contracts to do the home improvement work must be licensed. *See* COMAR 09.08.01.04(A).

Appellant next argues:

Since the decision in *Harry Berenter, Inc. v. Berman*, 258 Md. 290 [265 A.2d 759] (1970), the Courts have not followed the strict application of this decision. See: *Gannon and Sons[Son], Inc. v. Emerson*, 291 Md. 443 [435 A.2d 449] (1981); *Citaramanis v. Hallowell*, 329[328] Md. 142 [613 A.2d 964] (1992). In *Dereggi[DeReggi] Construction Company v. Mate*, 130 Md.App. 648, 658 [747 A.2d 743] (2000), Judge Adkins clearly cited and followed the above referenced cases:

Both *Emerson* and *Hallowell* indicate that a strict application of the rule that a contract that violates a regulatory requirement is unenforceable is not always appropriate. At times, the statutory goals are best satisfied by allowing such contracts to be enforced. Id.

The *Dereggi[DeReggi]* case specifically held that <u>substantial compliance</u> with requirements of the Montgomery County Code requiring a builder's license before executing a contract was sufficient for the builder to maintain a cause of action. *Id.* at 660 [747 A.2d 743].

We have no quarrel with the proposition that substantial compliance with the licensing statute entitles a contractor to enforce a home improvement contract. The *DeReggi* case, *supra,* like the one at hand, dealt with the issue of whether the circuit court erred in dismissing a petition to establish a mechanic's lien brought by a contractor, who at the time it contracted with the defendant, did not have the required license to do the work mentioned in the petition to establish the mechanic's lien. 130 Md.App. at 653, 747 A.2d 743. In *DeReggi*, the contractor agreed to build a home for the appellees in Montgomery County but, at the time of contracting, did not have the license required under the Montgomery County Code. *Id.* at 652–53, 747 A.2d 743. The *DeReggi* Court distinguished that case from *Berenter* on the grounds that the contractor "did obtain a building license after the contract was executed but before any actual work began pursuant to the contract." The contractor in *DeReggi* contended that because he had a license when the work began, he had substantially complied with the requirements of the Mont-

gomery County Code. *Id.* at 658, 747 A.2d 743. After holding that substantial compliance with the Montgomery County licensing requirement would be sufficient to allow a builder to maintain a cause of action to enforce a mechanic's lien, *id.* at 660, 747 A.2d 743, we remanded the case so that additional evidence could be produced concerning the question as to whether the builder had substantially complied with the Montgomery County Code.

Judge Sally Adkins, speaking for this Court in *DeReggi*, said:

> [C]ircumstances may arise where a financially responsible and otherwise qualified builder fails to strictly comply with the licensing requirements. To deny such a builder access to the courts *per se* will lead to a harsh and inequitable result in the instances where a builder completes the project in a professional manner. For this reason, we agree with those jurisdictions that have found that substantial compliance with builder's licensing requirements is sufficient. *See Capitol Indent.[Indemnity]*, 900 P.2d at 1214 (citing cases); *McNairy v. Sugar Creek Resort, Inc.,* 576 So.2d 185, 187 (Ala.1991); *Latipac, Inc. v. Superior Court of Marin County,* 64 Cal.2d 278, 49 Cal.Rptr. 676, 411 P.2d 564, 567 (1966) ("If the facts clearly indicate that the contractor has 'substantially' complied with the statute and that such compliance has afforded to the obligor the protection contemplated by the statute, we have rejected the obligor's attempts to escape liability."); *Murphy v. Campbell Inv. Co.,* 79 Wash.2d 417, 486 P.2d 1080, 1083 (1971).

In the instant case, we remand to the circuit court for a determination of whether appellants substantially complied with the MCC [Montgomery County Code]. The trial court should determine whether the purpose of the statute, to protect the public from unscrupulous and financially irresponsible contractors, has been met. In determining whether there was substantial compliance, courts in other jurisdictions have looked at a number of factors, including: (1) whether the contractor held a valid license at the time of contracting; (2) whether the contractor readily secured a

license; and (3) the responsibility and competence of the contractor. *See Latipac,* 49 Cal.Rptr. 676, 411 P.2d at 568–70. Although "each factor need not be present ... 'the true test is whether the contractor's substantial compliance with the licensing requirements satisfies the policy of the statute.' " *Capitol Indent.[Indemnity],* 900 P.2d at 1213 (quoting *Koehler v. Donnelly,* 114 N.M. 363, 838 P.2d 980, 982 (1992)).

*Id.* at 660–61, 747 A.2d 743.

The facts here presented stand in stark contrast to the facts presented in *DeReggi,* where the contractor obtained the required license prior to starting work on the contract. Here BSB never acquired the license required. Four of the cases cited in *DeReggi* provide good illustrations of what does constitute substantial compliance with a licensing statute.

In *Jones v. Short,* 696 P.2d 665 (Alaska 1985), a contractor filed a petition to establish a mechanic's lien. *Id.* at 666. The petition was challenged by the property owner, who demonstrated that the petitioner did not have a valid certificate of registration as required by state law when the contract with defendant was made. *Id.* at 667. Nevertheless, the contractor had, prior to entering into the contract, done everything necessary to obtain the required certificate, including acquiring public liability and property insurance and a surety bond, and had paid a filing fee, but his insurance agent had failed to procure the necessary insurance certificate for him. The *Jones* Court held that petitioner was in substantial compliance with the regulatory statute because what the contractor had done afforded the public the same protection that strict compliance would offer. *Id.* at 668.

In the case of *Aesthetic Property Maintenance, Inc. v. Capitol Indemnity Corporation,* 183 Ariz. 74, 900 P.2d 1210, 1212 (1995), a licensed contractor moved to a new address while in the process of renewing its license in 1990. The contractor included its new address with the renewal papers he filed and the license was renewed. *Id.* In late 1991, the Registrar of Contractors erroneously sent a renewal notice to

the contractor's old address. Because the notice was not received, the license was not renewed, as it should have been by the end of 1991. Because it was not renewed, the license expired. *Id.* Meanwhile, in December 1991, prior to the expiration of its license, the contractor entered into a contract to perform certain construction work with the defendant. *Id.* The contractor's license was suspended on January 1, 1992, and work was completed on March 5, 1992. *Id.* The contractor did not learn of the suspension until late June 1992. *Id.* When the contractor discovered the mistake, it immediately sought and received reinstatement. During this lapse of licensure, the contractor maintained its general liability insurance, workers' compensation insurance, and surety bond. *Id.*

The contractor was not paid and it sued the defendant for non-payment; the defendant raised the defense of non-licensure. *Id.* The Arizona Supreme Court noted, at the outset, that the purpose of the licensure statute was to protect the public from unscrupulous, unqualified, and financially irresponsible contractors. *Id.* at 1213. The court held that under the facts of that case, the legislative purpose had been fulfilled because the contractor remained financially responsible by keeping current its surety bond, workers' compensation insurance, liability insurance, and financial documents and that no one was prejudiced by the contractor's failure to strictly comply with the licensing requirement. *Id.* at 1213–14.

In *McNairy v. Sugar Creek Resort, Inc.,* 576 So.2d 185 (Ala.1991), a contractor, on July 6, 1987, applied for a license and with his application deposited a cashier's check in the amount of $200.00 to pay for it. On the same date, the contractor requested that his bank release certain information to the licensing board. *Id.* at 185–86. The bank neglected to file the necessary paper work with the licensing board for almost a year. *Id.* at 186. On June 20, 1988, the bank belatedly filed the required information and the State issued the contractor a license on that date. *Id.* Meanwhile, while it was not licensed, the contractor entered into a contract with Sugar Creek Resort, Inc. ("Sugar Creek"). *Id.* at 187–88. At that point, it was unknown to the contractor that the bank had

not sent the paperwork to the State. As a result, the contractor did some work for Sugar Creek while unlicensed. *Id.* In response to a suit for non-payment of the amount due on the contract, Sugar Creek raised a no-license defense. The Alabama Supreme Court held in favor of the contractor and against Sugar Creek because the contractor's failure to obtain a license was solely caused by his bank's oversight, and because Sugar Creek, after the contractor became licensed, repeatedly ratified and adopted the original contract by making payments. *Id.* at 188–89.

Another substantial performance case cited in *DeReggi* is *Murphy v. Campbell Investment Co.,* 79 Wash.2d 417, 486 P.2d 1080 (1971). In that case, a contractor applied for a license, but the application was rejected because the contractor failed to include proof of liability and property damage insurance (although in fact the contractor had such insurance). *Id.* at 1081. At the same time, the contractor was negotiating a contract with a property owner to provide labor, materials, and equipment for a construction project. *Id.* The parties signed a contract, construction started immediately thereafter, and the contractor resubmitted its license application about three weeks after work started. The license was then promptly issued. The Court held that substantial compliance with the licensing statute was shown inasmuch as the purpose of the statute was to "prevent the victimizing of a defenseless public by unreliable, fraudulent and incompetent contractors, many of whom operated a transient business from the relative safety of neighboring states." *Id.* at 1083. The statute was written to ensure minimum financial security for the consumers who hire building contractors. Once again, the statutory purpose was fulfilled because the contractor had the required property and liability insurance and surety bond, and the license having been rejected due to a purely technical defect. *Id.*

The common feature of the cases just summarized is that shortly after the contract at issue was signed, the contractor obtained a license, the defendant was not prejudiced, and the purpose of the statute was accomplished even though the

*i*

contractor had not strictly complied with the dictates of the licensing law.

The purpose of the Maryland Home Improvement Law is, among other things, to protect homeowners from unskilled builders. That is the obvious reason for requiring an applicant for a license to pass a test and to have experience. *See* Md.Code Ann., (Bus.Reg.) sections 8–302 and 8–302.2. Another purpose is to make sure that contractors are financially responsible. *See* section 8–302.1 (requiring contractors to have at least $50,000.00 in liability insurance). Also built into the law are remedies that the homeowner has against licensed contractors. Section 8–208 of the Home Improvement Law charges the Home Improvement Commission with the administration and enforcement of the statute and subtitle 3 Sections 8–301–8–317 authorize the commission to take remedial actions if there are violations of the licensing provisions. As pointed out in *Brzowski v. Maryland Home Improvement Commission,* 114 Md.App. at 628, 691 A.2d 699, provisions of the law governing the administration of the Home Improvement Guaranty Fund limit payments from the Fund to only those submitted by claimants who can establish that he or she has suffered actual loss due to the act or omission of a licensed contractor.

Because neither BSB nor Mr. Lenkey, who signed on behalf of BSB, had a home improvement license, Stewart was foreclosed from making a successful claim against either of them before the Home Improvement Commission, even though Stewart claims that the contractor was guilty of faulty workmanship. Nor does Stewart have any assurance that the person and/or entity he contracted with is financially sound. And, the mere fact that Stonehenge International, a sub contractor, was licensed does not fulfill the purpose of the Home Improvement Law insofar as Stewart is concerned. After all, Stewart never contracted with that entity and thus could not have successfully brought a breach contract action against Stonehenge.

For all the reasons set forth above, we hold that BSB did not substantially comply with the licensing requirements of the Maryland Home Improvement Law. Thus, the motions judge did not err when she ruled that the contract BSB sought to enforce by imposition of a mechanic's lien was unenforceable.

## IV.

Appellant claims, citing Md. Rule 12–304(e)(3), that the court erred in not allowing it thirty days to request that the case be set for trial. Md. Rule 12–304 deals with the procedure to be followed when a petition to establish a mechanic's lien is filed.

Maryland Rule 12–304(e)(3) reads:

(3) Probable cause not found. If no judgment or interlocutory order is entered under subsection (1) and (2), the court shall enter an order that the portion of the complaint seeking to establish the lien be dismissed unless the plaintiff, within 30 days thereafter, files a written request that the portion of the complaint seeking to establish the lien be assigned for trial.

The rule relied upon by BSB only applies when the court finds that no probable cause for the issuance of a mechanic's lien exists. The circuit court did not make a "no probable cause" finding in this case, nor was it required to do so. *Berenter v. Berman, supra,* is directly on point. The holding in *Berenter* was that an unlicensed home improvement contractor cannot enforce a home improvement contract by imposition of a mechanic's lien. 258 Md. at 291, 298–99, 265 A.2d 759. Because BSB's contract with Stewart could not be enforced, appellant was not entitled to a trial at which it could attempt to enforce the contract.

## V.

As already mentioned, BSB raises the question: "Did the circuit court err in denying Appellant's motion for an interlocutory order?" In its brief, however, it does not answer that

question. Nor is any argument presented in relation to it. By failing to present argument in support of its position, appellant waived its right to have us consider this question. *See Beck v. Mangels,* 100 Md.App. 144, 149, 640 A.2d 236 (1994).

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**