NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DAVID C. SHINN, *Plaintiff/Appellant,*

*v.*

ARIZONA BOARD OF EXECUTIVE CLEMENCY, *Defendant/Appellee.*

EVERETTE BERRY, et al., *Real Parties in Interest*

No. 1 CA-CV 20-0617
FILED 10-19-2021

Appeal from the Superior Court in Maricopa County
No. CV2020-007052
The Honorable Randall H. Warner, Judge

**AFFIRMED**

COUNSEL

Struck Love Bojanowski & Acedo, PLC, Chandler
By Daniel P. Struck, Nicholas D. Acedo, Jacob Brady Lee
*Counsel for Plaintiff/Appellant*

Piccarreta Davis Keenan Fidel, PC, Tucson
By Michael L. Piccarreta
*Co-Counsel for Real Party in Interest Nevada Freeman*

Arizona Justice Project, Phoenix
By Lindsay Herf, Karen Singer Smith, Katherine Puzauska
*Co-Counsel for Real Party in Interest Nevada Freeman*

Arizona Voice for Crime Victims, Inc., Phoenix
By Colleen Clase, Nathan Andrews
*Counsel for Amicus Curiae Arizona Voice for Crime Victims, Inc.*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Acting Presiding Judge Jennifer M. Perkins and Judge Jennifer B. Campbell joined.

---

**C R U Z**, Judge:

¶1        David C. Shinn, Director of the Arizona Department of Corrections Rehabilitation & Reentry ("ADOC") appeals the superior court's order granting preliminary injunctive relief to Real Party in Interest Nevada Freeman and ordering ADOC to release Freeman on parole with home arrest conditions after the Arizona Board of Executive Clemency's ("the Board") unanimous decision to grant Freeman parole.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        Freeman committed first degree murder in 1994 and was convicted and sentenced that same year.  At sentencing, the prosecutor told the superior court that he did not think a natural life sentence was appropriate and asked the court to impose a more lenient sentence of 25 years to life.  The superior court agreed, stating on the record, "I think that this case is that type of case where it should be 25 calendar years.  The defendant had no record prior to this. . . . It's ordered defendant receive the sentence of 25 calendar years without possibility of release until those years have been served."

2

**¶3** Freeman remained incarcerated, and in 2018 and 2019 ADOC certified Freeman as parole eligible pursuant to Arizona Revised Statutes ("A.R.S.") section 31-412(A). In July 2019, the Board voted unanimously to grant Freeman parole with home arrest conditions. Shortly before Freeman was due to be released, ADOC sent the Board a letter asking it to rescind its grant of parole. The Board held a rescission hearing in October 2019. At ADOC's request, the Board voted to take the matter under advisement pending our supreme court's ruling in *Chaparro v. Shinn*, 248 Ariz. 138 (2020).

**¶4** In March 2020, the Arizona Supreme Court issued its opinion in *Chaparro*, and the Board scheduled another rescission hearing. *Id.* Before the hearing, counsel for ADOC told Freeman's counsel that it would not take a position on rescission at the hearing. Contrary to that assurance, at the May 2020 hearing ADOC took the position that it had erroneously certified Freeman as parole eligible and asked the Board to rescind its grant of parole. Freeman presented letters from his original sentencing judge and the Pima County Attorney's Office, indicating that the parties and the court all intended that Freeman would be eligible for parole after 25 years. At the conclusion of the hearing, the Board denied ADOC's request to rescind its grant of parole to Freeman.

**¶5** Thereafter, ADOC refused to release Freeman on parole despite multiple requests from Freeman's counsel. In June 2020, Shinn filed a complaint in superior court requesting, among other things, declaratory judgment confirming that Freeman's sentence did not include parole eligibility. Freeman filed a motion for preliminary injunction requesting his immediate release on parole as ordered by the Board.

**¶6** In August 2020, the superior court denied Freeman's request for preliminary injunction, finding that the 1994 sentencing order could not be interpreted to make him eligible for parole because the order sentenced him to "Life without the possibility of release before 25 calendar years have been served" rather than life "without the possibility of parole for 25 years." The court stated in its order, "Judges can, of course, correct their orders if what is said does not reflect what they intended. But if Defendants wish to seek correction of their sentencing orders, they must do so in their criminal cases."

**¶7** Freeman did just that, and in September 2020 the State of Arizona and Freeman entered into a stipulation to correct and clarify the record in Freeman's criminal case. The parties stipulated that "at the time of sentencing, all Parties involved—Judge Kelly, the State, and Mr.

Freeman—believed and intended that after twenty-five years in prison, Mr. Freeman would be eligible for parole, and, if granted parole by [the Board], he would be released on parole." The parties further jointly requested "that Mr. Freeman's sentencing order be corrected to include the word 'parole' as a form of release as intended by the Sentencing Court." In addition, the State stipulated that it would not appeal from the amended sentencing order.

¶8            That same month, a superior court judge in Pima County entered a nunc pro tunc order in Freeman's criminal case amending Freeman's sentence to "Life without the possibility of Parole and any other type of Release, before twenty-five calendar years have been served." Freeman's counsel informed ADOC's counsel at the Attorney General's Office about the order and requested ADOC to immediately release Freeman on parole.

¶9            It did not do so, and in October 2020, Freeman filed a renewed motion for preliminary injunction in this matter. After argument, the superior court granted the motion and ordered ADOC to immediately release Freeman. ADOC filed a request for stay, which the superior court denied. In December 2020, ADOC filed an emergency motion for stay in this court, which we denied. When ADOC still did not release Freeman, he filed a petition for contempt and order to show cause, asking the superior court to find Shinn in contempt for violating the order granting the preliminary injunction. ADOC finally released Freeman and he withdrew the contempt petition. Shinn timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(5)(b).

## DISCUSSION

¶10            "Granting or denying a preliminary injunction is within the sound discretion of the [superior] court, and its decision will not be reversed absent an abuse of that discretion." *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 366, ¶ 9 (1999). A party seeking a preliminary injunction must establish (1) a strong likelihood of success at trial on the merits; (2) the possibility of irreparable injury to the party not remediable by damages if the requested relief is not granted; (3) a balance of hardships favors the party; and (4) public policy favors the injunction. *Shoen v. Shoen*, 167 Ariz. 58, 63 (App. 1990).

¶11            From 1973 to 1984, Arizona's first degree murder sentencing statute provided that "[a] person guilty of first degree murder . . . shall suffer death or imprisonment in the custody of the department of

corrections for life, **without possibility of parole** until the completion of the service of twenty-five calendar years . . . ." A.R.S. § 13-703(A) (1984) (emphasis added). In 1985, the legislature amended the statute to read that a person found guilty of first degree murder "shall suffer death or imprisonment in the custody of the department of corrections for life, **without possibility of release on any basis** until the completion of the service of twenty-five calendar years if the victim was fifteen or more years of age. . . ." A.R.S. § 13-703(A) (1985) (emphasis added). In 1993, the legislature amended the statute to add a "natural life" sentence. A.R.S. § 13-703(A) (1993). The statute provided, in relevant part:

> A person guilty of first degree murder . . . shall suffer death or imprisonment in the custody of the state department of corrections for life as determined and in accordance with the procedures provided in subsections B through G of this section. If the court imposes a life sentence, the court may order that the defendant not be released on any basis for the remainder of the defendant's natural life. An order sentencing the defendant to natural life is not subject to commutation or parole, work furlough or work release. **If the court does not sentence the defendant to natural life, the defendant shall not be released on any basis until the completion of the service of twenty-five calendar years if the victim was fifteen or more years of age** . . . .

*Id.* (emphasis added). Also in 1993, the legislature amended Title 41, Chapter 11, Article 1, to eliminate parole for all felony offenses committed by adult defendants on or after January 1, 1994. A.R.S. § 41-1604.09 (1993); *see also* 1993 Ariz. Sess. Laws Ch. 255 § 88 (First Reg. Sess.). Despite the amendment to Title 41, the legislature did not amend A.R.S. § 13-703 to reflect that parole was no longer available. *See* A.R.S. § 13-703(A) (1994) (language in section A remained the same as the 1993 version of the statute).

¶12 In *Chaparro*, the Arizona Supreme Court considered a certified question from the United States District Court for the District of Arizona:

> Whether, in light of A.R.S. § 41-1604.09, a person convicted of first degree murder following a jury trial for actions that took place on or after January 1, 1994, is parole eligible after 25 years when the sentencing order states that he is sentenced to "life without possibility of parole for 25 years."

248 Ariz. at 139, ¶ 1.  A jury found Chaparro guilty of first degree murder for an act he committed in 1995.  *Id.* at 140, ¶ 3.  The superior court sentenced Chaparro to "life without possibility of parole for 25 years, followed by a consecutive term of community supervision," and the State did not appeal.  *Id.* at ¶¶ 3, 7.  After Chaparro served 24 years in prison, ADOC informed him that it would not certify him as parole eligible, and he sued ADOC in federal district court pursuant to 42 U.S.C. § 1983.  *Id.* at ¶ 5.  Noting first that Chaparro's sentence was ambiguous because the superior court used both of the terms "parole" and "community supervision," our supreme court found that the court's sentencing order and the sentencing transcript demonstrated that the court intended for Chaparro to be eligible for parole after 25 years of imprisonment, and concluded that Chaparro was eligible for parole after serving 25 years.  *Id.* at 140-42, ¶¶ 8, 11-12, 17.  Although Chaparro's sentence was "illegally lenient because it violates § 41-1604.09, as amended in 1993," the sentence was final and enforceable because the State did not appeal it.  *Id.* at 142, ¶ 19.

¶13　　　　In this case, the State stipulated and the superior court agreed, that at the time of sentencing all parties involved, including the sentencing judge, believed and intended that Freeman would be eligible for parole after 25 years.  The superior court's nunc pro tunc order amended Freeman's sentence to life without the possibility of parole and any other type of release before he served twenty-five calendar years.  "The purpose of . . . [a nunc pro tunc] order is to make the records speak the truth and . . . record now for then what actually did occur," and the power to enter such an order "is inherent in the court."  *Rae v. Brunswick Tire Corp.*, 45 Ariz. 135, 142-43 (1935); *see also State v. Johnson*, 113 Ariz. 506, 509 (1976) ("The purpose of a nunc pro tunc order is to make the record reflect the intention of the parties or the court at the time the record was made[.]").  Here, the nunc pro tunc order accurately reflects the sentence the sentencing judge believed he imposed at the time of Freeman's 1994 sentencing.  The record shows that the sentencing judge intended that Freeman would be eligible for parole when he used the word "release" in his sentencing order.

¶14　　　　Shinn argues the order is invalid and the superior court erred by relying on it because it changed Freeman's sentence into an illegal one.[1]

---

[1]　　　Shinn also argues, for the first time on appeal, that the superior court's nunc pro tunc order does not control because the court was without jurisdiction to enter it.  We do not consider this argument because Shinn failed to present it in the superior court.  *See Crowe v. Hickman's Egg Ranch, Inc.*, 202 Ariz. 113, 116, ¶ 16 (App. 2002) ("Issues not properly raised below are waived.").

Although the amended sentence was "illegally lenient because it violates § 41-1604.09, as amended in 1993," the sentence was final and enforceable because the State did not appeal it. *Chaparro*, 248 Ariz. at 142, ¶ 18. Accordingly, the superior court in this matter did not err by finding that, in light of *Chaparro*, Freeman had established a strong likelihood of success at trial on the merits.

**¶15**        Further, the court did not err by finding a possibility of irreparable harm to Freeman should the preliminary injunction not be granted, and that a balance of the equities and public policy favored the injunction. As the court noted, "every day spent in custody is a day's freedom lost that can never be restored." We agree with the superior court: *Chaparro* reflects the public policy of the State of Arizona that a defendant who received a parole-eligible sentence—even if illegally lenient—must be released on parole if ordered by the Board. We find no abuse of discretion in the superior court's decision to grant the preliminary injunction in favor of Freeman.

## CONCLUSION

**¶16**        For the foregoing reasons, we affirm.

